Ben PERLMUTTER and Bernice
Perlmutter, Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

The PERLMUTTERS, INC., Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

Nos. 8531, 8532.

United States Court of Appeals
Tenth Circuit.

Feb. 3, 1967.

Gene F. Reardon, Denver, Colo. (Gene W. Reardon, Denver, Colo., was with him on the brief), for petitioners.

Harry Marselli, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson, Harold C. Wilkenfeld, J. Edward Shiliingburg, and Lawrence B. Silver, Attys., Dept. of Justice, were on the brief), for respondent.

Before BREITENSTEIN and SETH, Circuit Judges, and KERR, District Judge.

**BREITENSTEIN, Circuit Judge.**

These consolidated petitions attack a decision of the Tax Court, reported at 44 T.C. 382, holding that the petitioners were deficient in federal income tax payments. Reversal is sought on the grounds that the deficiency notices were invalid; that the finding of unreasonable salary payments by the corporate taxpayer to its president is not sustained by the evidence; and that the individual taxpayers are entitled to claim certain alleged business losses as deductions. We affirm the Tax Court.

A prerequisite to jurisdiction of the Tax Court is a notice of deficiency sent by the Secretary of the Treasury to the taxpayer.[1] The Secretary has delegated to the Commissioner of Internal Revenue the function of issuing deficiency notices, and the Commissioner, in turn, has redelegated that function to the District Directors.[2]

From November, 1960, until his retirement in April, 1961, Allan, the District Director at Denver, Colorado, did not function in that capacity because of illness. Allan designated his assistant, Hill, to act as District Director and Hill served as such until December 11, 1960. After appropriate request, the United States Civil Service Commission approved the appointment of "a temporary identical-additional position of District Director of Internal Revenue, Denver, Colorado." Lee Phillips was appointed to that position and took over from Hill. On January 19, 1961, Phillips signed and issued, as District Director, the deficiency notices with which we are concerned.

The petitioners in each case say that the appointment and acts of Phillips are without validity and effect because only one District Director's job is authorized and only one person can fill it at any one time. The answer is that the Commissioner is authorized to redelegate authority to perform functions, including issuance of deficiency notices, "to other officers or employees under his supervision and control."[3] The delegation of the requisite authority was implicit in the assignment of Phillips to the Denver office. His issuance of the deficiency notices served the functional purpose of advising the taxpayers of the claims asserted against them. The Commissioner has never disclaimed the validity of the acts of Phillips but instead has supported them by the position taken in the Tax Court and here. From a practical standpoint, the office of District Director cannot cease operating because of the Director's illness. A presumption of official regularity attaches in situations such as that presented.[4] Cases like Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178, and

---

1. See §§ 7442, 6212(a) and 6213(a), Internal Revenue Code of 1954, 26 U.S.C. §§ 7442, 6212(a) and 6213(a).

2. Sections 302.6212–1(a) and 301.7701–9(b), Treas.Reg. on Procedure and Administration (1954 Code), 26 C.F.R. §§ 301.6212–1(a), 301.7701–9(b).

3. Section 301.7701–9(c), Treas.Reg. on Procedure and Administration (1954 Code), 26 C.F.R. § 301.7701–9(c).

4. See Stearns Co. v. United States, 291 U.S. 54, 61, 54 S.Ct. 325, 78 L.Ed. 647, and Tameling v. Commissioner of Internal Revenue, 2 Cir., 43 F.2d 814, 816.

Annoni v. Blas Nadal's Heirs, 1 Cir., 94 F.2d 513, are not pertinent, They dealt with situations where no color of authority for the newly created jobs existed. Here we are concerned with the delegation of authority. We are convinced that this occurred and that the deficiency notices issued by Phillips were sufficient both to notify the taxpayers and to sustain the jurisdiction of the Tax Court.

In No. 8532, the corporate taxpayer protests the disallowance as a deduction of a portion of the salary paid to its president, Ben Perlmutter. It claimed an income tax deduction of $53,901.44 for compensation paid to Ben for the fiscal year ending January 31, 1960. The Commissioner held that the deduction was excessive; that $34,900 was reasonable compensation for the personal services actually rendered; and that tax was payable on the difference.

The company was incorporated in 1955 and was in the business of developing a residential subdivision in the Denver metropolitan area. This development included the construction and sale of homes. Ben organized the company and, except for qualifying shares, was its sole stockholder. Ben arranged the financing for the company, made all of the primary decisions, and was responsible for its success and reputation. He was the only corporate officer to whom a salary was paid. The company never paid any dividends.

The following table shows the salaries which the company paid Ben for the fiscal years ending January 31 and the approximate percentage of the company's gross income which each year's salary represented:

| Year | Salary | Percentage |
|------|--------|------------|
| 1956 | - 0 - | - 0 - |
| 1957 | $13,000 | 15 |
| 1958 | 30,900 | 7 |
| 1959 | 34,900 | 11 |
| 1960 | 53,901.44 | 21 |

Prior to fiscal 1960, the year with which we are concerned, Ben spent all of his time for the company. In that year he devoted only one-half to three-quarters of a day to the company affairs. During 1960, Ben decided the amount of his salary as the year progressed by withdrawals charged to a loans receivable account which was eliminated at year end by a closing entry charging balance to salary.

In the fiscal years 1958, 1959, and 1960, the company's gross receipts were $3,259,228, $2,070,057, and $1,595,579 respectively and the income before Ben's salary and federal income tax was $85,340, $81,506, and $58,186 respectively. In the two years after fiscal 1960, Ben's salary was $14,500 and $17,500. He testified that in those years he devoted less time to the company's affairs because of his health and his doctor's order.

Section 162(a) (1), Internal Revenue Code of 1954, 26 U.S.C. § 162(a) (1), permits a taxpayer to deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered." The pertinent Treasury Regulation provides that "the test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services." [5]

The controlling principles are stated in Golden Construction Company v. Commissioner of Internal Revenue, 10 Cir., 228 F.2d 637, 638. We there said that no fixed rule applies to determine what is a reasonable salary; that reasonableness depends on the circumstances of each case; that the question is one of fact; that the findings of the Tax Court are conclusive unless clearly erroneous; that the credibility of witnesses, the weight of evidence, and the reasonable inferences to be drawn therefrom are for the Tax Court; and that special scrutiny should be given compensation paid by corporations whose stock is closely held. The burden of showing that com-

---

5. Section 1.162–7(a), Treas. Reg. on Procedure and Administration (1954 Code), 26 C.F.R. § 1.162–7(a).

pensation to corporate officers is reasonable and hence a deductible business expense lies on the taxpayer.[6]

■ In an effort to sustain that burden, the taxpayer produced two witnesses in addition to Ben. One, Jordon Perlmutter, was a nephew of Ben and the other, Jacob Grazi, was a home builder who came to the Denver area in 1960. All three testified that a reasonable compensation for Ben would be in the range from $55,000 to $60,000. The Commissioner introduced no rebutting testimony. The taxpayer claims that its evidence of reasonableness must be accepted because it is uncontradicted. In this circuit the rule that "controlling, positive and uncontradicted evidence" may not be disregarded is subject to a qualification requiring that the evidence "is not inherently improper, and no circumstance reflected on the record casts doubt on its verity."[7] We have also held that the Tax Court is not concluded by opinion evidence but may disregard it and draw inferences from the other evidence adduced.[8]

■ In the case at bar, the uncontradicted opinion evidence must be weighed against the circumstances of Ben's total control of the company, the lack of corporate dividends, Ben's decreased activity for the company in the year involved, the company's decreased gross receipts and income, the disproportionate increase in salary, and the informal way in which Ben determined his salary by withdrawals. With this background, the Tax Court was justified in rejecting the opinions of the witnesses.

The taxpayer also urges that the 1960 compensation was proper as augmenting the underpayment of Ben for services rendered to the company in prior years. The difficulty is that the record contains no evidence that the company intended any of the 1960 payments to Ben to be compensation for past services.[9]

Each case in the reasonable compensation area must be decided on its own facts. We are convinced that substantial evidence and reasonable inferences therefrom justify the finding of the Tax Court that a reasonable salary for Ben during the year in question was $34,900 and that payments in excess thereof were not properly deductible by the taxpayer as business expenses. The decision of the tax court is not clearly erroneous.

In No. 8531, the individual taxpayers object to the disallowance of $16,818 in their 1959 joint return either as a business expense or capital loss. The Commissioner determined that the amount claimed was a nondeductible gift to a daughter Barbara or to her husband, Marvin (Sonny) Bernstein.

In February, 1958, Barbara obtained a used motor vehicle dealer's license in the name of Sonny's Auto Sales. Ben furnished the necessary capital and credit by opening a joint checking account in the name of Sonny's Auto Sales, by advancing money, and by paying bills. In April, 1959, Sonny filed a voluntary petition for bankruptcy, and later received a discharge. Ben was not listed as a creditor in the bankruptcy proceedings.

A taxpayer may deduct against his ordinary income "losses incurred in a trade or business" or "losses incurred in any transaction entered into for profit."[10] Ben claims that he entered into a joint venture with his son-in-law Sonny; that he invested money in the business; and

6. Botany Worsted Mills v. United States, 278 U.S. 282, 293, 49 S.Ct. 129, 73 L.Ed. 379.

7. Nicholas v. Davis, 10 Cir., 204 F.2d 200, 202. See also Gallegos v. Cox, 10 Cir., 258 F.2d 703, 704, certiorari denied 385 U.S. 869, 87 S.Ct. 138, 17 L.Ed.2d 97.

8. Golden Construction Co. v. Commissioner of Internal Revenue, 10 Cir., 228 F.2d 637, 639.

9. In Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733, relied on by the taxpayer, the corporation's board of directors passed a resolution stating that certain payments were for past services.

10. Section 165(c) (2), Internal Revenue Code of 1954, 26 U.S.C. § 165(c) (2).

that he is entitled to a business loss deduction upon the failure of the enterprise.

 The existence of a joint venture depends on the intent of the parties. Intention is a question of fact. The burden of showing a joint venture is upon the taxpayer asserting its existence.[11]

 The evidence adduced by the taxpayers is unsatisfactory. Ben did not testify to the nature of his relationship with Sonny's Auto Sales. No evidence was presented of a written or oral agreement of either joint venture or partnership. Neither Barbara nor Sonny testified. Ben's explanation of the absence of his name from pertinent documents because he did not want his name associated with the business is inconsistent with his actions whereby two banks and a number of Sonny's creditors knew of his connection with the business. Ben failed to report any amount as profit or loss on Sonny's Auto Sales in the partnership and business income portions of his 1958 and 1959 tax returns, and he was not listed as a creditor in the bankruptcy proceedings affecting Sonny. Family transactions are subject to special scrutiny.[12] Substantial evidence and reasonable inferences therefrom support the Tax Court finding that no joint venture existed.

At the Tax Court hearing, counsel for the taxpayers specifically disclaimed that the advances by Ben were in the nature of loans. In that court, the taxpayers did not rely on the deductibility of the amount in question as a capital loss and some doubt may exist as to the propriety of our consideration of the point.[13] Counsel fail to explain how a capital loss can exist in the circumstances. The situation presented is that of a father setting up his daughter and her husband in a business and then helping to bail them out when the business went on the rocks. The taxpayers have failed to convince us that they were entitled to the deduction claimed.

Affirmed.

---

11. In Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 741–742, 69 S.Ct. 1210, 93 L.Ed. 1659, and Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 90 L.Ed. 670, the Supreme Court held that intent to form a partnership was a question of fact. The same rule applies to a joint venture because it is a type of partnership.

12. Finley v. Commissioner of Internal Revenue, 10 Cir., 255 F.2d 128, 131.

13. See General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154, and Stephens v. Commissioner of Internal Revenue, 10 Cir., 255 F.2d 108, 114.