**PEPSI–COLA BOTTLING COMPANY OF SALINA, INC.,**
**Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 74–1388.

United States Court of Appeals, Tenth Circuit.

Submitted Jan. 23, 1975.

Decided Dec. 8, 1975.

As Amended on Denial of Rehearing Jan. 21, 1976.

Thomas J. Kennedy, Salina, Kan. (Robert B. Berkley, Salina, Kan., on the brief), for petitioner-appellant.

F. Arnold Heller, Atty., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Elmer J. Kelsey, Daniel F. Ross, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before HOLLOWAY, McWILLIAMS and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

This appeal challenges a determination made by the Commissioner of Internal Revenue that compensation paid to the executive officer of a closely held corporation was unreasonably high in three tax years, deductions for the full amount of the compensation should be denied, and that deficiencies existed. The Tax Court sustained the findings of unreasonableness of compensation, allowing however more deductions than the Commissioner. 61 T.C. 564.

The taxpayer is the Pepsi-Cola Bottling Co. of Salina, Inc., a Kansas corporation engaged in the manufacture, packaging and distribution of particular name brand soft drinks within an exclusive franchise area. The company began as a sole proprietorship in 1941, operated by R. W. Nesbitt and his wife, Verla Nesbitt. When Mr. Nesbitt died in 1945, Mrs. Nesbitt continued the business as sole proprietor until July 1, 1955, at which time she caused the business to be incorporated. Mrs. Nesbitt, now Mrs. Joscelyn, has served as president and general manager of the corporation since its inception and has at all times held 248 of the outstanding 250 shares of stock (Tr. 50).

On February 14, 1956, the directors of the company adopted a resolution which has remained continuously in effect since that time and which prescribes a contingent compensation arrangement for Mrs. Joscelyn.[1] Compensation was paid to Mrs. Joscelyn in accordance with the resolution for the years 1956 through 1970. This suit concerns only the compensation which the company deducted on its returns for the calendar years 1968, 1969 and 1970. The compensation to Mrs. Joscelyn in those three years was $67,187, $88,457 and $97,552, respectively, all in accordance with the resolution.

Through the years the company has been highly successful. The national Pepsi Cola Company considers per-capita consumption within a franchise territory to be one of the best measures of a successful franchise holder. By this standard the taxpayer company ranked first in Kansas and in the top 5% of approximately 500 Pepsi Cola bottling plants in the United States. There was undisputed testimony that in the opinion of experienced individuals engaged in the bottling business, the growth and success of the taxpayer company has been due primarily to the managerial attributes and qualities of Mrs. Joscelyn.[2]

During the years in issue Mrs. Joscelyn was in good health, was 63, 64 and 65 years of age, and continued to be active in the business. She was the company's only active executive officer for all the years in question. During those years the company employed respectively a total of 56, 60 and 64 persons. Mrs. Joscelyn had no other business activities and the undisputed proof was that she worked 50, 60 or 70 hours a week, working six days a week and on Sundays, if necessary. She performed all types of tasks for the Company (Tr. 24).

The Commissioner determined deficiencies for 1968, 1969 and 1970 in the respective amounts of $35,158.05, $47,859.44 and $50,783.89, concluding that compensation to Mrs. Joscelyn was excessive to the extent that it was in excess of $40,000 for each year in issue (R. 64–65). The taxpayer filed a petition in the Tax Court for a redetermination of the income tax deficiencies.

1. The resolution provided in pertinent part:

BE IT RESOLVED, That the compensation of Verla Nesbitt, for her services as Manager of the business, of this corporation, be and the same is hereby fixed at an annual salary of $6,000.00 per year, and an annual bonus based on the net income of this corporation for its respective calendar year after deduction of all expenses other than Federal and State corporate income taxes, in an amount to be determined by totaling the sums resulting from application of percentages to brackets of such net income, as follows:

10% of the first $10,000.00
20% of the next $10,000.00; and
30% of all such net income in excess of the first $29,000.00. (R. 66)

2. For years 1956 to 1970, inclusive, the company had net sales, taxable income, and stockholder's equity, as follows:

| Year | Net Sales | Taxable Income | Stockholder's Equity |
|---|---|---|---|
| 1956 | $ 662,358 | $ 40,961 | $ 65,687 |
| 1957 | 669,012 | 34,909 | 88,410 |
| 1958 | 805,228 | 51,571 | 119,493 |
| 1959 | 925,305 | 62,454 | 157,279 |
| 1960 | 953,413 | 55,238 | 189,770 |
| 1961 | 1,041,904 | 81,583 | 235,387 |
| 1962 | 1,165,382 | 71,636 | 275,817 |
| 1963 | 1,198,923 | 86,764 | 322,877 |
| 1964 | 1,216,888 | 67,979 | 374,388 |
| 1965 | 1,490,934 | 78,334 | 423,307 |
| 1966 | 1,646,954 | 104,672 | 485,794 |
| 1967 | 1,752,738 | 90,547 | 542,684 |
| 1968 | 1,972,727 | 149,418 | 622,508 |
| 1969 | 2,208,932 | 196,542 | 728,841 |
| 1970 | 2,379,935 | 215,706 | 845,541 |

At trial the Tax Court received testimony and written evidence, including a statistical comparison of executive compensation in the soft drink industry (Exhibit 4–D, 1968 Financial Survey of the Soft Drink Industry, published by the National Soft Drink Association). It was shown also that the company had never paid a dividend to shareholders.

The Tax Court concluded that the company had shown the Commissioner's determinations as to reasonable amounts of compensation to be erroneous, but it did not agree that Mrs. Joscelyn's compensation during the years in issue was a reasonable allowance for personal services actually rendered within the meaning of § 162 of the Internal Revenue Code (R. 74). The Court found that $50,-000 for 1968, $54,500 for 1969 and $57,-500 for 1970 constituted reasonable compensation to Mrs. Joscelyn for the services rendered (R. 78). Since only the company appealed, we address solely the issue whether the Tax Court erred in finding that the compensation paid by Mrs. Joscelyn was unreasonable to the extent that it exceeded the amounts stated above.

 Section 162(a)(1) of the Internal Revenue Code of 1954 permits a taxpayer to deduct as ordinary and necessary business expenses "a reasonable allowance for salaries or other compensation for personal services actually rendered." 26 U.S.C.A. § 162(a)(1). The controlling principles for review of Tax Court decisions under this section of the Code are clear. No fixed rule applies to determine a reasonable salary. Reasonableness depends on the circumstances of each case and the question is one of fact which must be determined in light of all the evidence. *Perlmutter v. C. I. R.*, 373 F.2d 45, 47 (10th Cir.). The taxpayer has the burden of showing that the amounts deducted were in fact reasonable compensation. *Botany Worsted Mills v. United States*, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929); see also *Perlmutter*, supra at 47.

The factors to be considered in determining reasonableness of compensation have been stated innumerable times. The Tax Court accepted the formulation found in *Mayson Mfg. Co. v. C. I. R.*, 178 F.2d 115, 119 (6th Cir.), without apparent disagreement from either party. We present these factors in a numerical listing to facilitate further references. They include:

1. The employee's qualifications.
2. The nature, extent and scope of the employee's work.
3. The size and complexities of the business.
4. A comparison of salaries paid with the gross income and the net income.
5. The prevailing general economic conditions.
6. A comparison of salaries with distributions to stockholders.
7. The prevailing rates of compensation for comparable positions in comparable concerns.
8. The salary policy of the taxpayer as to all employees.
9. In the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years.

 The situation must be considered as a whole, with no single factor being decisive. Moreover, the action of a corporate board of directors in voting salaries for a given period is entitled to the presumption that such salaries are reasonable and proper. *Mayson*, supra at 119.

 Since the determination of reasonableness is a factual one, this court need only decide whether or not the findings of the Tax Court are clearly erroneous. *Commissioner of Internal Revenue v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; *Perlmutter*, supra at 47. And we note at the outset that in determining reasonableness of compensation special scrutiny should be given to compensation paid by a corporation whose stock is closely held. Ibid.

■ The Tax Court carefully weighed the evidence presented in light of the factors discussed in *Mayson*. It pointed out that Mrs. Joscelyn gave very sparse testimony herself. The Court found that the taxpayer has failed to carry its burden of proving that the compensation paid was reasonable. Although the bulk of the evidence was offered by the taxpayer, we find that there was substantial proof to support the finding and conclusion of the trier of fact. *Socash v. Addison Crane Co.*, 120 U.S.App.D.C. 308, 346 F.2d 420, 421; *West v. H. K. Ferguson*, 382 F.2d 630, 632 (10th Cir.). We cannot say the Tax Court was clearly in error in finding that the compensation paid to Mrs. Joscelyn in 1968, 1969 and 1970 was unreasonable insofar as it exceeded the amounts of $50,000, $54,500 and $57,500, respectively.

On appeal the taxpayer makes two main points: (1) that the Tax Court erred in disallowing use of the agreed compensation formula which was adopted in good faith and was reasonable when adopted, which is the proper time at which to judge the agreement, and which has been consistently followed; and (2) that the Court erred in using statistical data from a 1968 soft drink industry survey on executive compensation without proof of comparability to the services rendered by Mrs. Joscelyn, which the taxpayer claimed to be unique and primarily responsible for the company's growth and success. (Brief of Appellant at 10–11, 26).

The taxpayer did not present evidence on each of the *Mayson* factors with the object of proving the compensation reasonable. Rather, the company attempted to explain the absence of proof of several of these factors by urging that those factors were not readily applicable to the specific situation herein. First, the company offered little or no evidence of the nature, extent and scope of Mrs. Joscelyn's work, factor 2. Indeed, the Tax Court was moved to comment that "many dark areas" were left in this part of the case (R. 74). The company also offered no evidence on the prevailing economic conditions, factor 5, or on the salary policy of the company as to other employees, factor 8. There was a survey exhibit, discussed below, comparing salaries with those paid by other companies, factor 7.

As stated, the Tax Court considered a comparison with other soft drink executives shown by the national survey (See appendix to this opinion). The taxpayer submitted proof, however, that "it is difficult to put a value on [Mrs. Joscelyn's] services because they are unique and different from any other soft drink bottling operation," (Petitioner's Exhibit 6, affidavit of witness Jesse Shisler), suggesting that a meaningful comparison of prevailing rates of compensation for comparable positions in comparable firms could not be undertaken here, factor 7. Despite the uniqueness of these services and the impossibility of a meaningful comparison, the taxpayer produced an expert witness to offer his opinion that the compensation paid in 1968, 1969 and 1970 was a "very reasonable price to pay" for the unique and valuable services rendered by Mrs. Joscelyn. He also testified that Mrs. Joscelyn did the work of two or three executives in other plants of comparable size (Petitioner's Exhibit 7, affidavit of witness W. I. Lang.).[3]

■ The taxpayer argues that the testimony of these two witnesses, Lang and Shisler, was definite and uncontradicted, was not specifically found to be unwor-

---

**3.** The Tax Court concluded that Mr. Lang was qualified as an expert by virtue of his extensive experience of over 50 years in his particular business (Tr. 40). However the court implied that it would subject his testimony to scrutiny and possibly reduce the weight of the testimony if the witness offered a comparison of executive salaries in the soft drink industry since, in fact, this witness was in an altogether different field (Tr. 40). As the Tax Court opinion contains no reference to Mr. Lang's testimony, or his affidavit stating that the paid compensation was reasonable, we conclude that in fact the Court placed little or no weight on his testimony.

thy of belief, and showed the error of the Tax Court's ruling (Appellant's Brief at 28). We must agree that strong and appealing arguments are made by the taxpayer in support of its position and against the Tax Court's findings and its use of some evidence in reaching its findings. We rely again, however, on our conclusion in *Golden Construction Co. v. C. I. R.*, 228 F.2d 637, 639 (10th Cir.) that the "Tax Court is not concluded by opinion evidence, and it may disregard such evidence and draw inferences from other evidence and the facts and circumstances." The credibility of witnesses, the weight of the evidence, and the reasonable inferences to be drawn therefrom are for the Tax Court to determine in such cases, *Perlmutter*, supra at 47. As will be discussed, there were other factors which led the trier of fact to a different conclusion than the one postulated by the expert witnesses in this case.

In addition to its contention that Mrs. Joscelyn's services were unique and that her compensation was reasonable, the taxpayer attempted to justify its reasonableness through the formula theory which has again been argued on this appeal. The taxpayer says that the amount of compensation was fixed by a formula, reasonable in the year of its adoption, and enforced in good faith by the company and the employee (Appellant's Brief at 10–11, 13–21). The company points to uncontradicted testimony of an accountant familiar with the making of the formula agreement. He said it was a fair and reasonable method for compensating Mrs. Joscelyn, that it had been followed consistently since 1955, and that it had been accepted by the IRS until this controversy arose.

■ The Tax Court concluded that the original bargain resulted in compensation "unrealistic on the high side" in the years 1968, 1969 and 1970, and therefore the compensation in those years was unreasonable. The company argues that the Tax Court erred when it applied this test (Appellant's Brief at 17). The taxpayer contends that a compensation arrangement does not lose its good faith character because its automatic operation in later years under favorable circumstances results in high compensation (Appellant's Brief at 11). The taxpayer relies on Treasury Regulation § 1.162–7(b)(2), which concludes as follows:

> Generally speaking, if contingent compensation is paid pursuant to a *free bargain between the employer and the individual* made before the services are rendered *not influenced by any consideration on the part of the* employer other *than that of securing on fair and advantageous terms the services of the individual*, it should be allowed as. a deduction even though in the actual working out of the contract, it may prove to be greater than the amount which would ordinarily be paid. (emphasis added)

We cannot agree that the Tax Court erred when it declined to apply this provision to the taxpayer's case. First, the premise of the regulation is a free bargain made solely for the purpose of securing the services of the employee. Here that is not actually present, since the arrangement was in substance an agreement between Mrs. Joscelyn, acting as the predominant shareholder of the company, and herself, acting as an individual employee. Cf. *Hammond Lead Products v. Commissioner of Internal Revenue*, 425 F.2d 31, 33 (6th Cir.). Nor could the agreement be characterized as one intended solely to secure the services of the individual for the benefit of the employer. Without inferring that any improper motivation existed for the agreement, it is nevertheless obvious that the owner's interest and capabilities were likely available to her closely held company in any event without the inducement of the agreement, although reasonable compensation is, of course, proper and deductible.

The company points out that the facts of *Mayson* are similar to those in the instant case and that there the court overturned the finding of the Tax Court that the compensation was unreasonable (Appellant's Brief at 17–18). *Mayson,*

however, is distinguishable. There the executive employees had gained control of the company by the time of the compensation year in question. They apparently had the power to alter the compensation scheme which the Commissioner alleged had produced unreasonably high compensation deductions. Yet, the Court in *Mayson* noted that the bonus contract and compensation rate were negotiated by the majority stockholder at the start of the corporate existence in furtherance of a sound principle and incentive compensation (then covering two of the three persons whose compensation was in question). The Court also pointed out that the then majority stockholder's financial interest was in opposition to unreasonable or excessive compensation. *Mayson*, supra at 121. And it was noted that the third person whose compensation was in question was not a director when his contract of employment was made. Id.

However, due to the identity between the predominant shareholder and the employee in our case we cannot accept the applicability of the "incentive compensation" reasoning. Mrs. Joscelyn did not have a lack of such incentive. As owner of 248 of 250 shares she would profit from her hard work even without salary compensation. A bonus contract that might be reasonable if executed with an executive who is not a controlling shareholder may be viewed as unreasonable if made with a controlling shareholder, since incentive to the stockholder to call forth his best effort would not be needed. 4A Mertens, Law of Federal Income Taxation § 25.75 (1972); see also *City Chevrolet Co. v. CIR*, 228 F.2d 894 (4th Cir.); *Giles Industries, Inc. v. Commissioner of Internal Revenue*, 496 F.2d 556, 563, 204 Ct.Cl. 202.

The taxpayer argues that even if Treasury Regulation 1.162–7(b)(2) is not applicable, its unavailability does not compel the conclusion that the contingent compensation was unreasonable. The taxpayer refers to a further subsection of the regulation which, according to the taxpayer, embodies the holding of *Mayson* (Appellant's Brief at 17). This subsection, Treas.Reg. § 1.162–7(b)(3), suggests that the circumstances to consider in measuring reasonableness "are those existing at the date when the contract for services was made. . . ." However, some of the primary circumstances before the Tax Court in this case did then exist, *e.g.*, the fact that the employee was at that time the predominant shareholder of the company and was in effect contracting for her own services.

We also note that in qualifying the preceding paragraph on contingent compensation arrangements, subsection (b)(3) provides that "In any event the allowance for the compensation paid may not exceed what is reasonable under *all* the circumstances." Treas.Reg. § 1.162–7(b)(3) (emphasis added). This sentence comports with the view that all the circumstances must be considered in determining the reasonableness of the compensation. See *Perlmutter*, supra at 47. As noted above, we believe factors other than the taxpayer's evidence support the findings of the Tax Court. Mrs. Joscelyn herself testified that the company had never paid a dividend or made a distribution of profits during its entire corporate history. The company had offered an explanation, keyed to directors' minutes, and facts stated, for the lack of any dividends on the basis of need to retain earnings for bona fide expansion of business, replacement of plant and equipment, and providing necessary working capital (R. 27–46; 7–8, 49). The explanation was, however, apparently not persuasive to the Tax Court, and we are not persuaded that its assessment of the facts on this record was clearly erroneous.

The *Mayson* case specifically considered the fact of distribution to stockholders in comparison with salaries paid as a factor in measuring reasonableness, factor 6. Indeed, the reason for the scrutiny of contingent compensation arrangements in close corporations is the suspicion that deductible salary expenses are a disguise for non-deductible profit distributions. See *Heil Beauty Supplies v. Commissioner of Internal Revenue*,

199 F.2d 193, 194 (8th Cir.); 4A Mertens, Law of Federal Income Taxation § 25.80 (1972). The non-payment of a dividend in conjunction with a contingent compensation scheme for a controlling shareholder has frequently been recognized as an indication that unreasonable and excessive compensation is being paid. See, e.g., Perlmutter, supra at 48; *Pacific Grains, Inc. v. Commissioner of Internal Revenue*, 399 F.2d 603, 607 (9th Cir.); *Logan Lumber Co. v. Commissioner of Internal Revenue*, 365 F.2d 846, 851 (5th Cir.); *Long Island Drug Co., Inc. v. Commissioner of Internal Revenue*, 111 F.2d 593, 594 (2d Cir.), cert. denied, 311 U.S. 680, 61 S.Ct. 49, 85 L.Ed. 438. Compensation deductions have been disallowed, even if reasonable in amount, where the court believes that the distribution is not in fact compensation but rather a distribution of earnings. See *Charles McCandless Tile Co. v. United States*, 422 F.2d 1336, 1339, 191 Ct.Cl. 108 (1970); *Heil Beauty Supplies, Inc. v. Commissioner of Internal Revenue*, 199 F.2d 193, 194 (8th Cir.).

Considering the record as a whole we cannot say that the Tax Court's findings were clearly in error. Accordingly, the decision is affirmed.

APPENDIX

The Tax Court found in pertinent part, 61 T.C. at 566:

The parties have presented as a joint exhibit, and both seem to rely upon, the Fourth Financial Survey of the Soft Drink Industry published in 1969 by the National Soft Drink Association of Washington, D. C. This survey was conducted and compiled by Arthur Young & Co. during 1968 and also includes certain data from previous surveys conducted in 1962, 1964, and 1966. Because of the disparity of the sizes of reporting companies, compilations and specific items are all expressed as percentages of net sales. The survey reports 1968 data from all reporting companies (92); reports 1968 data for companies with gross sales of from $1 to $2 million [1] (25 companies); and reports 1968 data for companies located in the west-central geographic region (region No. 4) which includes Iowa, Kansas, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota (14 companies).

We make the following findings of fact based upon such survey, and from evidence of record regarding petitioner for 1968:

| | All reporting companies (92) | Companies with $1 to $2 million sales (25 companies) | Geographic region 4 (14 companies) | Petitioner |
|---|---|---|---|---|
| Net operating income [1] | 7.6% | 7.84% | 8.89% | 7.58% |
| Salaries [1] of owners, partners, and executive officers (number not specified except one as regards petitioner) | 3.10% | [2] 2.82% | 3.97% | [3] 3.40% |
| Total number of employees | 83 | 60 | 42 | [4] 56 |

[1] Expressed as a percentage of net sales.
[2] This figure is expressed for various sized companies as follows:

| Companies with gross sales of | Executive officers' salaries |
|---|---|
| Under $½ million (12 companies reporting) | 4.8% |
| $½ million to $1 million (21 companies reporting) | 3.99% |
| $1 million to $2 million (25 companies reporting) | 2.82% |
| $2 million to $5 million (25 companies reporting) | 2.46% |
| Over $5 million (9 companies reporting) | 1.26% |

[3] Petitioner's figure for 1969 is 4 percent and its figure for 1970 is 4.1 percent.
[4] This figure was 60 for 1969 and 64 for 1970.

Line 2 of the above table shows that the salaries of owners, partners, and executive officers of all reporting companies (92) expressed as percentage of net sales for 1968 was 3.1 percent. This same figure was 3.5 percent for 1966, 3.9 percent for 1964, and 4.6 percent for 1962.

1. Petitioner's gross and net sales for 1968, 1969, and 1970 were (rounded) $1.9 million, $2.2 million, and $2.3 million.