ACME CONSTRUCTION CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Acme Constr. Co. v. Commissioner
Docket No. 7017-93
United States Tax Court
T.C. Memo 1995-6; 1995 Tax Ct. Memo LEXIS 4; 69 T.C.M. (CCH) 1596; January 9, 1995, Filed *4 Decision will be entered under Rule 155. For petitioner: Lewis T. Barr and William H. Baughman, Jr.
For respondent: J. Scott Broome. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined a $ 122,188 deficiency in petitioner's Federal income tax for the taxable year ending April 30, 1990 (fiscal year 1990). The sole issue for decision is whether petitioner may deduct as reasonable compensation amounts it paid to David Horth in fiscal year 1990. The following chart shows the contentions of the parties and the amount allowed by this opinion: Allowable Deduction
for Compensation Paid
to David Horth in
Fiscal Year 1990 Petitioner's position
$ 442,150
Respondent's position
108,272
Amount of deduction
442,150
allowed by this opinion
Respondent's position reflects compensation for services rendered in fiscal year 1990 only. Petitioner's position reflects payments for services rendered in fiscal years 1983 to 1990. Section references are to the Internal Revenue Code in effect during the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated *5 and are so found. 1. Petitioner's Background
Petitioner is a closely held corporation the principal place of business of which was in Cleveland, Ohio, when it filed the petition. Petitioner specialized in railroad construction, reconstruction, and rehabilitation and related site preparation; switchwork and electrical work, earth excavation, compacting and rolling, and embankment construction; and storm and sanitary sewer reconstruction. Petitioner did most of its work in the Cleveland area, but also worked in New York, Pennsylvania, West Virginia, Kentucky, Indiana, Michigan, and Ohio, and occasionally in Maryland, Virginia, and Illinois. Petitioner is one of several construction companies that have been operated by members of the Horth family in Cleveland, Ohio. Homer Horth operated Acme Construction Co. (Acme I) in the Cleveland area during the 1920s. Acme did rail construction, reconstruction, rehabilitation, and related work. It operated in various forms under Homer Horth's control until the early 1950s when Homer Horth retired. Homer Horth's sons, John F. Horth and Kenneth Horth, and an unrelated person, Jack Frish, operated Acme I as a partnership after Homer *6 Horth retired. They incorporated the partnership and created Acme Construction, Inc. (Acme II), on July 22, 1968. Acme II operated until December 1982, and dissolved on October 12, 1984. On October 13, 1962, John F. Horth's wife and children and Kenneth Horth's wife and children formed a separate corporation called Horth Contractors Corp.Horth Contractors Corp. owned construction equipment which it leased to Acme I. In May 1978, all but four shareholders of Horth Contractors Corp. sold their stock to Horth Contractors Corp. The remaining shareholders were John F. Horth's wife Janey and son David Horth, and Kenneth Horth's sons, Peter Horth and John D. Horth. After another transfer and redemption in December 1982, David Horth owned 50 percent, Peter Horth owned 33 percent, and John D. Horth owned 17 percent of Horth Contractors Corp.
2. David Horth
David Horth worked as a laborer for Acme II while he was in high school. He later operated heavy construction equipment for Acme II. He continued to work for Acme II while he attended college, sometimes as a field foreman. He worked for Acme II for seven summers and did nearly every field job. David Horth received a bachelor's *7 degree in civil engineering and a master's degree in construction engineering and business management from Stanford University. After he finished his graduate studies, he worked full time for Acme II. He began as a payroll clerk and worked in various financial and managerial capacities. He learned project estimating and bidding from his uncle. 3. Petitioner
In 1982, David and Peter Horth went into the rail construction business for themselves. On December 17, 1982, they renamed Horth Contractors Corp. Its new name was Acme Construction Co., Inc. (petitioner or Acme III). David Horth was president, treasurer, and a director of petitioner in December 1982. Peter Horth was vice president, assistant secretary, and a director at that time. Louis Paisley, a nonfamily member and petitioner's outside legal counsel, was secretary and a director. Neither David Horth nor Peter Horth was an officer or director for petitioner or Horth Contractors Corp. before December 1982. John D. Horth has not participated in petitioner's management. Both David and Peter Horth prepared bids for petitioner. Petitioner did the same type of work as Acme II. It had many of the same customers. *8 Petitioner hired many of Acme II's employees. Petitioner operated at the same location as Acme II. Petitioner began performing construction work immediately after it was formed. David and Peter Horth were not petitioner's highest paid employees. For example, in 1984 and 1986 petitioner paid Carl Eberhardt union scale, which was more than it paid either David or Peter Horth. David and Peter Horth discussed their compensation levels. Bonding companies and credit sources required petitioner to conserve cash. David and Peter Horth recognized the need to conserve cash. Peter Horth wanted his and David Horth's compensation to be relatively low. David Horth believed that he was undercompensated, but went along with Peter Horth until Peter Horth resigned as a director. On January 1, 1983, petitioner had $ 437,628 in cash, $ 505,658 in assets (less accumulated depreciation for equipment and machinery), $ 23,386 in liabilities, and $ 474,397 in retained earnings. From 1983 through 1990, David Horth worked 12 to 14 hours per day, 5 and sometimes 6 days a week. He traveled up to 40,000 miles a year. He used his car, and later a van equipped as a mobile office with a telephone and *9 computer, to prepare bids while being driven from site to site. In fiscal year 1990, petitioner had about 100 employees. 4. Horth Contractors Co.
David, Peter, and John D. Horth formed a partnership called Horth Contractors Co. (the partnership) on July 1, 1985. David Horth owned 50 percent, Peter Horth owned 33-1/3 percent and John D. Horth owned 16-2/3 percent of the partnership. The partnership bought the real property where petitioner's office is located from Kenneth Horth and John F. Horth on July 1, 1985. The partnership gave the sellers a $ 325,000 note. The partnership did not distribute any cash to the partners due to its debt service. Before the partnership bought the real property, petitioner rented it from Acme II. Petitioner was responsible for maintaining the partnership's property. 5. Redemption of Peter Horth's Stock
By 1988, David and Peter Horth had different business philosophies. David Horth suggested to Peter Horth that one of them leave petitioner. David and Peter Horth did not have any buy and sell agreements. In September 1988, Peter Horth decided to leave. David and Peter Horth went to petitioner's legal counsel and asked him to *10 prepare documents for petitioner to buy Peter Horth's stock. Peter Horth also bought John D. Horth's stock. Peter Horth retained separate legal counsel to represent him in his withdrawal from petitioner. On December 11, 1988, Peter Horth resigned as an employee of petitioner. He did not perform any services or receive any compensation after December 1988. However, he continued to serve as a director of petitioner. Petitioner's counsel and Peter Horth's counsel negotiated the withdrawal. They prepared documents, such as a redemption agreement, security agreement, and shareholder consent, which the parties signed on April 2, 1990. On April 2, 1990, petitioner redeemed all of Peter Horth's shares, including the shares that John D. Horth had owned. Peter Horth resigned as a director on March 29, 1990, after which David Horth was petitioner's only director and shareholder. 6. David Horth's Compensation
The following chart compares David Horth's compensation with petitioner's gross and net income: David Horth's
Petitioner's
Base
Year
Gross Income
Net Income
Compensation
Bonus
Retirement
1983
- 0 -  $ 101,510 $  8,500
-0- -0-
1984
$ 3,027,045
236,688 35,750
-0- $  5,438
1985
3,697,644
347,168 41,590
-0- 6,239
1986
2,574,675
(41,678)
41,600
15,000
8,490
1987
3,820,994
(94,243)
43,929
-0- 6,431
1988
4,528,897
62,097 41,760
-0- 6,169
1989
4,975,680
192,646 56,600
-0- 6,240
1990
4,330,871
603,771 42,150
400,000
30,000
*11 Petitioner paid the $ 400,000 [1] bonus payment to David Horth in fiscal year 1990 in two checks of $ 200,000 each. One check bears the notation "Bonus Past Service from 5/01/83 - 4/30/89". The other says "Bonus FYE 4/30/90". Petitioner's payments to David Horth in fiscal year 1990 were compensation for his services to petitioner in fiscal year 1990 and earlier years. Petitioner did not use a method or formula to calculate the amount it paid to David Horth for fiscal year 1990. 7. Petitioner's Return and Respondent's Determination
Petitioner deducted $ 42,150 as base salary and $ 400,000 as a bonus for a total of $ 442,150 for compensation it paid to David Horth in fiscal year 1990. Respondent determined that it was unreasonable for petitioner to pay David Horth *12 more than $ 108,272 for services rendered in fiscal year 1990. The notice of deficiency contained no explanation for the amount respondent determined was reasonable. OPINION 1. Background
A taxpayer may deduct "a reasonable allowance for salaries or other compensation for services actually rendered". Sec. 162(a)(1). Compensation payments are deductible if they are: (1) Reasonable, and (2) purely for services. Sec. 162(a)(1); Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983), revg. and remanding T.C. Memo. 1980-282; sec. 1.162-7(a), Income Tax Regs. We must consider the facts of each case in deciding whether a taxpayer meets the requirements for deducting compensation paid under section 162(a)(1). Estate of Wallace v. Commissioner, 95 T.C. 525, 553 (1990), affd. 965 F.2d 1038 (11th Cir. 1992). Respondent determined that petitioner should not have paid David Horth more than $ 108,272 in fiscal year 1990. Respondent did not explain the basis for that amount. Respondent's determination is presumed to be correct, and petitioner bears the *13 burden of proving that the amounts which are more than allowed by respondent are reasonable compensation for services. Rule 142(a). If petitioner proves respondent's determination is wrong, the Court must then decide the amount of reasonable compensation. Pepsi-Cola Bottling Co. v. Commissioner, 61 T.C. 564, 568 (1974), affd. 528 F.2d 176 (10th Cir. 1975). Respondent contends petitioner failed to carry its burden of proving the compensation was reasonable and that the payments were for services to petitioner. 2. Reasonableness of David Horth's Compensation
Courts have considered many factors in deciding whether the amount of compensation is reasonable, such as: (a) The employee's qualifications; (b) the nature, extent, and scope of the employee's work; (c) the size and complexity of the business; (d) a comparison of salaries paid with sales and net income; (e) general economic conditions; (f) comparison of salaries to distributions to shareholders and retained earnings; (g) the employer's salary policy to all employees; (g) the employer's financial condition; (i) the prevailing rates of compensation for comparable *14 positions in comparable companies; (j) compensation paid in prior years; (k) whether the employee and employer dealt at arm's length; and (1) whether the employee guaranteed the employer's debt. Elliotts, Inc. v. Commissioner, supra; Kennedy v. Commissioner, 671 F.2d 167, 175 (6th Cir. 1982), revg. and remanding 72 T.C. 793 (1979); Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949), revg. and remanding a Memorandum Opinion of this Court; R.J. Nicoll Co. v. Commissioner, 59 T.C. 37, 51 (1972). No single factor controls. Mayson Manufacturing Co. v. Commissioner, supra.
a. Employee's Qualifications
An employee's superior qualifications for his or her position with the business may justify high compensation. See, e.g., Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1158 (1980); Dave Fischbein Manufacturing Co. v. Commissioner, 59 T.C. 338, 352-353 (1972). Respondent concedes that David Horth *15 had a superior formal education, but argues that petitioner has not shown that it qualified him for his position with petitioner. We disagree. David Horth's civil and construction engineering and management degrees are directly related to his position with petitioner. In addition, David Horth had well-rounded employment experience with petitioner. We conclude that he was well qualified to run petitioner's business. This factor favors petitioner. b. Nature, Extent, and Scope of Employee's Work
The position held by the employee, hours worked, duties performed, and the general importance of the employee to the success of the company may justify high compensation. Mayson Manufacturing Co. v. Commissioner, supra; see, e.g., Elliotts, Inc. v. Commissioner, supra at 1245-1246; American Foundry v. Commissioner, 536 F.2d 289, 291-292 (9th Cir. 1976), affg. in part and revg. in part 59 T.C. 231 (1972); Home Interiors & Gifts, Inc. v. Commissioner, supra at 1158. David Horth provided significant services as petitioner's *16 chief executive officer which caused petitioner's success. He anticipated business trends. He oversaw petitioner's daily operations. His work required judgment, technical skill, and adaptability. David Horth assumed Peter Horth's duties after Peter Horth left petitioner in December 1988. Petitioner's success after Peter Horth left petitioner is strong evidence of David Horth's efficiency and ability. Respondent argues that David Horth spent less time on petitioner's work because he spent time on the partnership. The record shows that David Horth spent most of his time and effort on petitioner. He worked 12 to 14 hours per day, 5 or 6 days a week. He designed and used a mobile office to allow him to work while traveling. There is no evidence that David Horth spent much time on the partnership. We do not believe the time he spent on the partnership detracted from petitioner's success. Bidding was crucial to petitioner because about 95 percent of petitioner's business resulted from competitive bidding. Respondent agrees that petitioner's bid function is complex. However, respondent contends that David Horth shared the preparation of bids with Peter Horth and others. David *17 Horth credibly testified that he prepared most of petitioner's bids. Respondent introduced no contrary evidence. The Court of Appeals for the Sixth Circuit said: "Getting and keeping customers, is, of course, the lifeblood of any business". Kennedy v. Commissioner, supra at 176. Like the employee in Kennedy, David Horth was solely responsible for soliciting every major customer for petitioner and maintaining relations with them. Respondent contends that petitioner did not rely on bidding because much of its business was from repeat customers. We disagree. Petitioner competitively bid 95 percent of its work. Repeat customers generally required petitioner to bid on jobs and awarded projects to the lowest qualified bidder. We believe petitioner had repeat customers primarily because petitioner's bids were competitive. Respondent contends that petitioner did not prove that its success in fiscal year 1990 was due to David Horth because petitioner used the completed contract method of accounting. Under this method, petitioner reported income when the contract was completed. Respondent argues that petitioner's income in fiscal year 1990 *18 benefited from Peter Horth's earlier bidding efforts. We disagree because there is no evidence that any contracts were completed in fiscal year 1990 on which Peter Horth bid, and both David and Peter Horth prepared bids. Peter Horth left petitioner in December 1988, leaving David Horth to ensure that work in progress was completed properly. This factor favors petitioner. c. Size and Complexity of the Business
Courts have considered the size and complexity of a taxpayer's business in deciding whether compensation is reasonable. Elliotts, Inc. v. Commissioner, 716 F.2d at 1246; Pepsi-Cola Bottling Co. v. Commissioner, 528 F.2d at 179; Mayson Manufacturing Co. v. Commissioner, supra.
Respondent contends that petitioner was not very large. Petitioner had about 100 employees and gross sales of about $ 4.3 million in fiscal year 1990. Respondent argues that David Horth supervised 15 employees while petitioner's superintendents supervised all field labor. We are not persuaded by respondent's claim. Even if this were true, this fact would not convince us that David Horth's responsibilities *19 differed from those of an active chief executive officer. Respondent argues that petitioner's business was simple except for the bid process. We disagree. Petitioner did rail construction, reconstruction, and rehabilitation and related site preparation, switchwork and electrical work, earth excavation, compacting and rolling, embankment construction, and storm and sanitary sewer reconstruction. Petitioner performed most of its work in the Cleveland area, but also worked in 10 neighboring States. The engineering, logistics, and financing of these operations are complex. Respondent contends that much of petitioner's success is due to the long history of Horth involvement in the construction industry in Cleveland. Petitioner was completely on its own by 1985. After an initial struggle, petitioner became very successful in fiscal years 1989 and 1990. We think David Horth deserves significant credit for petitioner's success. This factor favors petitioner. d. Comparison of Salaries Paid With Sales and Net Income
Courts have compared sales and net income to amounts of compensation in deciding whether compensation is reasonable. Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115 (6th Cir. 1949). *20 Respondent points out that David Horth's compensation was 73.23 percent of petitioner's profit (before taxes and officers' compensation in fiscal year 1990). However, respondent's view that Horth's compensation was unreasonable is incorrect because it fails to take into account the fact that David Horth's compensation in fiscal year 1990 was for services he rendered in and before fiscal year 1990. Also, petitioner's net income dramatically increased from about $ 62,000 to over $ 603,000 after loss years in 1986 and 1987 while gross income generally increased from about $ 3 to $ 4.5 million from 1984 to 1990. We believe David Horth's pay compares favorably with petitioner's sales and net income. Respondent argues that David Horth set his pay after he concluded that petitioner needed a large deduction for fiscal year 1990. We believe David Horth arranged for petitioner to make catchup payments to him for prior undercompensation as soon as Peter Horth resigned as a director on March 29, 1990. Thus, we do not share respondent's suspicion about the reason for the compensation. This factor favors petitioner. e. General Economic Conditions
General economic conditions may affect *21 a company's performance, and thus indicate the extent, if any, of the employee's effect on the company. Elliotts, Inc. v. Commissioner, supra; Mayson Manufacturing Co. v. Commissioner, supra. The parties agree that this factor is neutral. f. Comparison of Salaries With Distributions to Shareholders and Retained Earnings
The failure to pay more than minimal dividends may suggest that some of the amounts paid as compensation to the shareholder-employee is a dividend. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1322-1323 (5th Cir. 1987), affg. T.C. Memo. 1985-267; Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 152-153 (8th Cir. 1974), affg. T.C. Memo. 1973-130. The failure to pay dividends can be a "red flag" that invites further scrutiny by the court. Edwin's, Inc. v. United States, 501 F.2d 675, 677 n.5 (7th Cir. 1974). However, corporations are not required to pay dividends; shareholders may be equally content with the appreciation of *22 their stock caused, for example, by the retention of earnings. Owensby & Kritikos, Inc. v. Commissioner, supra; Elliotts, Inc. v. Commissioner, 716 F.2d 1241 (9th Cir. 1983); Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. at 1158. Respondent argues that petitioner's failure to pay dividends is strong evidence that David Horth's compensation was unreasonable. Petitioner's retained earnings increased from $ 498,732 at the beginning of fiscal year 1982 to $ 869,555 at the end of fiscal year 1990. This factor favors petitioner. g. Petitioner's Salary Policy to All Employees
Courts have considered salaries paid to other employees of a business in deciding whether compensation is reasonable. Home Interiors & Gifts, Inc. v. Commissioner, supra at 1159. This factor focuses on "whether the entity as a whole pays top dollar to all of its employees, shareholder- and nonshareholder-employees alike." Owensby & Kritikos, Inc. v. Commissioner, supra at 1330. A longstanding, consistently applied compensation plan *23 is evidence that compensation is reasonable. Elliotts, Inc. v. Commissioner, supra.
David and Peter Horth were petitioner's most valuable employees, but not petitioner's highest paid employees in years before fiscal year 1990. This tends to show that David and Peter Horth had been undercompensated. Respondent argues that this fact should be discounted because petitioner's higher paid employees had more experience or were under union contracts. Respondent theorizes that those employees were accustomed to salaries set by John and Kenneth Horth at Acme II. Respondent did not introduce any evidence supporting this theory. This factor favors petitioner. h. Petitioner's Financial Condition
The past and present financial condition of the company is relevant to deciding whether compensation was reasonable. Kennedy v. Commissioner, 671 F.2d at 174; Home Interiors & Gifts, Inc. v. Commissioner, supra at 1157-1158. Petitioner grew to become very profitable. This factor favors petitioner. i. Prevailing Rates of Compensation for Comparable Positions in Comparable Companies
*24 In deciding whether compensation is reasonable, we compare it to compensation paid for comparable positions in comparable companies. Elliotts, Inc. v. Commissioner, supra at 1246; Mayson Manufacturing Co. v. Commissioner, 178 F.2d at 119. Petitioner relied on expert testimony from Lanny Harer (Harer) for this factor. Harer was the only expert witness in this case. Expert witnesses' opinions may help the Court understand an area requiring specialized training, knowledge, or judgment. Fed. R. Evid. 702; Snyder v. Commissioner, 93 T.C. 529, 534 (1989). We may be selective in deciding what part of an expert's opinion we will accept. Helvering v. National Grocery Co., 304 U.S. 282 (1938); Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), affg. T.C. Memo. 1974-285; Parker v. Commissioner, 86 T.C. 547, 562 (1986); Chiu v. Commissioner, 84 T.C. 722, 734 (1985). Harer analyzed compensation for comparable positions in other companies. *25 He concluded that David Horth's compensation for fiscal year 1990 was reasonable primarily because petitioner underpaid David Horth in all years before fiscal year 1990, and that petitioner could reasonably have paid David Horth at least $ 296,000 for fiscal 1990 alone. This factor favors petitioner. j. Compensation Paid in Prior Years
i. In General
An employer may deduct compensation paid in a year even though the employee performed the services in a prior year. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 119 (1930); R.J. Nicoll Co. v. Commissioner, 59 T.C. at 50-51. To currently deduct amounts paid as compensation for past undercompensation, a taxpayer must show: (a) That it intended to compensate employees for past services from current payments, and (b) the amount of past undercompensation. Pacific Grains, Inc. v. Commissioner, 399 F.2d 603, 606 (9th Cir. 1968), affg. T.C. Memo. 1967-7; Estate of Wallace v. Commissioner, 95 T.C. at 554. We have found that petitioner's payments to David Horth in fiscal year 1990 *26 were compensation for his services to petitioner in fiscal year 1990 and earlier years. Petitioner deferred David Horth's compensation to build its business. Petitioner sought to preserve cash to get bonding and credit. ii. Expert Testimony
Harer testified that employers paid more for average comparable positions than petitioner paid to David Horth in fiscal years 1983 to 1989. David Horth took low pay until petitioner could pay him for past undercompensation and Peter Horth left petitioner. We believe that petitioner paid David Horth reasonable compensation in fiscal year 1990 for services he provided in fiscal year 1990 and prior years. [2]
*27 iii. Respondent's Arguments
Respondent argues that petitioner did not undercompensate David Horth because David and Peter Horth did not agree to draw lower salaries in exchange for later catchup payments. However, an agreement or even an obligation to defer compensation is not necessary for payments to be treated as attributable to prior years. Lucas v. Ox Fibre Brush Co., supra at 119. Respondent argues that Peter Horth could not have stifled David Horth's compensation. We disagree. David Horth credibly testified that Peter Horth did just that. Petitioner was able to correct David Horth's compensation only after Peter Horth was no longer a director for petitioner. Respondent points to the fact that petitioner paid David and Peter Horth's salaries in prior years after David and Peter Horth decided the amount. Respondent argues that the fact that they chose the amount means that they were not undercompensated. We disagree. Parties can agree on an amount of compensation and still be undercompensated. See, e.g., id.; Mayson Manufacturing Co. v. Commissioner, supra.
Respondent argues that there *28 was no reason for petitioner to underpay David and Peter Horth in prior years. We disagree. Petitioner needed to accumulate cash to satisfy its lenders and bonding companies. Respondent argues that petitioner has no corporate records other than the check stub which show that it underpaid David Horth during the prior years. This fact does not undermine petitioner's position in the context of the Horth's family business. Courts may give little or no weight to the lack of formal board resolutions about officers' compensation in closely held corporations. E.g., Levenson & Klein, Inc. v. Commissioner, 67 T.C. 694, 713-714 (1977); Reub Isaacs & Co. v. Commissioner, 1 B.T.A. 45, 48 (1924). In Levenson & Klein, Inc. v. Commissioner, supra at 714, we said: "Closely held corporations, as is well known, often act informally, 'their decisions being made in conversations, and oftentimes recorded not in the minutes, but by action.'" citing Reub Isaacs & Co. v. Commissioner, supra.
Peter Horth redeemed his stock at or below book value. Thus, respondent points *29 out that Peter Horth did not receive pay for prior years when he redeemed his stock. Peter Horth retained separate counsel to represent him during the redemption. Peter Horth and petitioner agreed on terms for redeeming all of his stock. Peter Horth could have redeemed his stock for more than book value. There is no evidence of anything which would have prevented him from negotiating payment for prior years. The fact that he did not do so does not convince us that petitioner did not undercompensate David or Peter Horth in earlier years. Respondent argues that David Horth was not underpaid by petitioner because the partnership paid him cash. Respondent attempts to reconstruct partnership cash-flow by analyzing rent that petitioner paid to it. However, the partnership did not pay David Horth cash. Respondent did not consider the long-term debt the partnership incurred when it bought the property from petitioner when respondent reconstructed cash-flow. Also, respondent did not consider the partnership's need to marshal cash to redeem Peter Horth's partnership interest. Respondent suggests that the rents were for more than fair market value, but there is no evidence to support *30 that contention. Respondent rejects the Robert Morris Associates' data cited by petitioner and argues that the PAS Executive Compensation Survey for Contractors 1985-91 data support respondent's position if David Horth's partnership income is combined with his pay from petitioner. As discussed above, the partnership is irrelevant to the reasonableness of income from petitioner. Also, the partnership did not distribute any cash to the partners due to its debt service. Respondent argues that David Horth controlled petitioner only after it became successful. We disagree. David Horth contributed significantly to petitioner's success. The fact that petitioner had a predecessor business does not detract from our conclusion. David Horth made petitioner very successful following 2 years of losses and then losing Peter Horth and financing ability. Thus, the fact that petitioner is not a startup venture does not detract from David Horth's contribution to petitioner's success. Respondent contends that petitioner's expert should have used data for average compensation. Harer used average comparable figures and concluded petitioner underpaid David Horth under four methods of analysis *31 when he computed undercompensation for years before 1990. Harer concluded that from 1984 to 1989 petitioner undercompensated David Horth by at least $ 198,205. We conclude that this factor favors petitioner. k. Whether the Employee and Employer Dealt at Arm's Length
If the employee and employer did not deal at arm's length, such as if the employee is the employer's sole or controlling shareholder, it suggests the amount of compensation paid may be unreasonable. Elliotts, Inc. v. Commissioner, 716 F.2d at 1246; Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d at 1324. David Horth is petitioner's sole shareholder. This factor favors respondent. We closely scrutinize compensation if the employee controls the employer to see if it is something other than the purchase price of the employee's services. Owensby & Kritikos, Inc. v. Commissioner, supra at 1322-1323; Charles Schneider & Co. v. Commissioner, 500 F.2d at 152; see also Dielectric Matls. Co. v. Commissioner, 57 T.C. 587, 591 (1972). Respondent argues that *32 we should closely scrutinize petitioner's pay to David Horth in fiscal year 1990 because he is the sole shareholder and an employee. In doing so, we consider: (i) Whether petitioner and David Horth bargained freely about the compensation, and (ii) a hypothetical independent investor's perspective. Elliotts, Inc. v. Commissioner, supra.There is no evidence that the compensation to David Horth resulted from free bargaining. That leads us to inquire whether an independent investor would approve the compensation in view of the nature and quality of the services performed and the effect of those services on the investor's return on his or her investment. Owensby & Kritikos, Inc. v. Commissioner, supra at 1326-1327; Elliotts, Inc. v. Commissioner, supra at 1246. We believe an independent investor would approve of David Horth's 1990 compensation because of the good rate of return after allowing petitioner to become successful by underpaying David Horth in prior years. Harer concluded that petitioner earned a 28.3-percent pretax return on investment after paying David Horth's compensation. *33 Harer noted that if petitioner had paid David Horth $ 108,272, which is the amount respondent contends would have been reasonable, petitioner would have earned a 61.2-percent pretax return on investment, which is more than double the best performing companies comparable in size. The prime indicator of the corporation's earnings for its investors is its return on equity. Owensby & Kritikos, Inc. v. Commissioner, supra at 1326-1327. This factor is neutral. 1. Employee Guaranteed Taxpayer's Debt
Courts have considered whether the employee personally guaranteed the taxpayer's debt. See R.J. Nicoll Co. v. Commissioner, 59 T.C. at 51. David Horth personally lent petitioner funds in fiscal year 1990 and prior years. He also personally guaranteed petitioner's debt. This factor favors petitioner. m. Respondent's Arguments
Respondent points out that petitioner did not use a formula. While a formula may be further evidence of reasonable compensation, respondent cites no authority that a taxpayer must use a formula. This fact does not convince us that David Horth's compensation was unreasonable. n. Conclusion
*34 Based on the above factors we conclude that $ 442,150 is reasonable compensation for David Horth in fiscal year 1990. 3. Whether Payments Are Purely for Services
Petitioner must prove that the amounts it paid to David Horth were purely for services rendered to petitioner. Sec. 162(a)(1); Elliotts, Inc. v. Commissioner, supra; sec. 1.162-7(a), Income Tax Regs. Respondent contends that petitioner did not carry its burden of proof. We disagree. David Horth credibly testified that petitioner paid him for services. Respondent offered no contrary evidence. We conclude that the amounts petitioner paid to David Horth in fiscal year 1990 were purely for services that he rendered to petitioner. Elliotts, Inc. v. Commissioner, supra; sec. 1.162-7(a), Income Tax Regs.
4. Conclusion
We hold that petitioner may deduct $ 442,150 as reasonable compensation under section 162(a)(1) in fiscal year 1990. Decision will be entered under Rule 155. Footnotes
1. The difference between the amount deducted on the fiscal year 1990 return and this amount results because fiscal year 1989 compensation included $ 15,000 that was not paid. Petitioner paid but did not deduct the $ 15,000 in fiscal year 1990.↩
2. Harer used average data and concluded that petitioner's pay to David Horth in fiscal year 1990 includes at least $ 198,205 for services he performed before fiscal year 1990. We believe David Horth is entitled to more than average pay especially in the later years when he turned petitioner around without Peter Horth's help. However, we believe Harer may have overstated reasonable pay for David Horth's services to petitioner in 1990 because he did not convince us that he used comparable data.↩