W. LEE KNIGHT and EVELYN KNIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Knight v. Commissioner
Docket No. 5285-71.
United States Tax Court
T.C. Memo 1975-77; 1975 Tax Ct. Memo LEXIS 296; 34 T.C.M. (CCH) 389; T.C.M. (RIA) 750077; March 25, 1975, Filed Henry Gelles, for the petitioners. Curtis W. Berner, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency of $8,906.81 in petitioners' income tax for the calendar year 1968. At issue is whether a debt which became worthless in 1968 was a nonbusiness debt, and consequently, whether petitioners were entitled to claim only a short term loss in that year subject *297 to the statutory limitations in respect of such losses. All of the facts have been stipulated. Petitioners are husband and wife; they resided in Saranac Lake, New York, at the time they filed their petition herein. In December, 1956, along with Jeanne and Jacques De Mattos, petitioners contracted to purchase certain property in Lake City, Florida, known as the Holiday Motel and Holiday Restaurant ("the Motel"). The transaction was consummated during the following month, and a warranty deed, mortgage and bill of sale were recorded on January 31, 1957. On February 8, 1957, these four persons registered with the county of Columbia, Florida, as doing business under the name "HOLIDAY MOTEL AND HOLIDAY RESTAURANT", with each designated as having a 25 percent interest in the business. Subsequently, the same persons organized Dak Company, Inc. ("DAK") for which a certificate of incorporation was filed in Florida on April 26, 1957. The capital stock of DAK consisted of 100 shares of common stock, 50 shares of which were issued to the petitioners for $17,500 and 50 shares to the De Mattoses for a like amount of cash. This stock was never thereafter transferred, nor was any additional stock *298 issued at any time. At the meeting of DAK's board of directors on May 23, 1957, petitioners were elected president and secretary of the corporation and authorized to enter into an agreement on its behalf to purchase the Motel from themselves and the De Mattoses for $225,200, payable as follows: $35,000 by the issuance of 100 shares of DAK capital stock, $40,000 by the issuance of demand notes at five percent interest, and the balance by the assumption of certain outstanding mortgages to which the property was subject. The business of operating the motel and restaurant was conducted by DAK, as shown by its annual financial statements which were prepared by DAK's certified public accountants in reliance (without independent verification) on the books and records provided by management. Although record title to the property does not appear to have been transferred to DAK in accordance with the agreement referred to in the previous paragraph, that property was nevertheless carried as an asset on DAK's books and records and was listed as such in its financial statements for each year, except in the statement as of December 31, 1968. Similarly, the mortgage obligations in respect of *299 the property were shown as a corporate liability in those statements, and deductions for depreciation, taxes, and interest were taken in the corporation's profit and loss statements. The record does not disclose any formal change in title to the property until November 20, 1968, when a warranty deed was recorded in Columbia County, Florida, purporting to convey all of the interest of petitioners in the Motel to persons named W. L. & Edna C. Summers. In 1958, DAK's board of directors voted to pay petitioner W. Lee Knight and Jacques De Mattos $5,000 each for services rendered in 1957, at which time they agreed that upon receiving these sums they would lend like amounts to the corporation. No evidence was offered suggesting that any other salary payments were ever authorized, and the corporate financial statements do not reflect any such payments for any year other than 1957. [1]
*300 DAK suffered losses during 9 of 11 years from 1957 through 1968 (the stipulation and accompanying exhibits are silent with respect to 1966) during which period it received loans from its shareholders, made repayments of portions thereof, and had outstanding annual balances as follows: Balance as of Year
Loan
Repayment
December 31
1957
$40,000.00
$18,896.00
$ 21,104.00
1958
12,147.24
221.37
33,029.87
1959
33,029.87
1960
33,029.87
1961
33,029.87
1962
33,029 .87
1963
33,029.87
1964
2,900.00
35,929.87
1965
800.00
35,129.87
1966
200.00
34,929.87
1967
2,211.51
37,141.38
1968
500.00
36,641.38
These debts of which petitioners' share in 1968 was $18,320.69 became worthless in that year, but DAK was not dissolved until October 14, 1969 when a certificate of dissolution was filed with the Secretary of State of Florida. The existence of a bona fide debt in the amount of $18,320.69 which became worthless in 1968 is not disputed. The only matter on which the parties disagree is the proper characterization of this bad debt. If the debt is a nonbusiness debt, then section 166(d)(1), I.R.C. 1954, *301 [2] allows the deduction only as a short term capital loss. And section 166(d)(2) defines the term "nonbusiness debt" to mean a "debt other than -- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business." We hold that the debt in controversy did not bear the necessary relationship to any trade or business conducted by petitioners, and that it therefore must be classified as a nonbusiness debt. While it is true that upon *302 acquisition of the motel property, the Knights and the De Mattoses filed a fictitious name registration dated February 8, 1957, in respect of the Holiday Motel and Holiday Restaurant business, DAK was thereafter incorporated, on April 26, 1957, to conduct that business, and the evidence shows that petitioners were merely stockholders and officers (as well as employees and directors) of that corporation. To be sure, naked title to the property remained in the individuals, who also were undoubtedly accountable as mortgagors, but the agreement between them and DAK placed the beneficial ownership in the corporation. In accordance with that arrangement, not only was the property treated as an asset of the corporation on its balance sheet, but the mortgage indebtedness in respect of the property was recorded thereon as its liability. And it was the corporation that deducted depreciation in respect of the property, as well as interest and taxes. In the circumstances, we conclude on the record before us that it was the corporation alone, and not petitioners, that conducted the motel and restaurant business. Moreover, petitioners' relationship to that business was not of such character *303 as to warrant treating DAK's liability to them as a business, rather than a nonbusiness debt. Certainly, their mere status as stockholders, officers and employees of DAK is not a sufficient basis to support their position. Cf. United States v. Generes,405 U.S. 93; Whipple v. Commissioner,373 U.S. 193. Nor does it appear that there were unusual circumstances present like those in Trent v. Commissioner,291 F. 2d 669 (C.A. 2), where the loans were made to protect an employee's job and salary. The only salary that could even be treated as having been paid to petitioners was an item of $5,000 in 1957. The evidence fails to show any other compensation during the years 1957-1968, apart, perhaps, from comparatively small amounts for life insurance during the years 1957-1964 (see footnote 1, supra) which might or might not on this record be susceptible of classification as compensation. Plainly, the loans to DAK by petitioners were not made to protect their salaries. Nor is there any basis for concluding that the loans were made in connection with their ownership of the real estate. Not only does the record fail to show *304 that DAK paid them any rent for use of the property, but it affirmatively discloses that DAK treated the property as its own; petitioners' interest in the property was held for the benefit of DAK. What we have said above amply disposes of petitioners' alternative contention that they were engaged in a joint venture with DAK. Whether a joint venture existed between petitioners and DAK is a question of fact for which the burden of proof rests on petitioners. Perlmutter v. Commissioner,373 F. 2d 45, 49 (C.A. 10), affirming 44 T.C. 382; Hubert M. Luna,42 T.C. 1067. In Beck Chemical Equipment Corporation,27 T.C. 840, 848-849, we noted that, The legal relationship known as a joint venture has been defined as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation," and also as "an association of persons to carry out a single business enterprise for profit." * * * However, "the essential question is whether the parties intended to, and did in fact, join together for the present conduct of an undertaking or enterprise, *305 " and among the many factors to be considered in determining whether a joint venture exists are: The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses * * * whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise. Herbert M. Luna,supra, 42 T.C. at 1077-8. Here there is no evidence of an oral or written agreement between petitioners and DAK to form a joint venture, of Federal partnership returns having been filed, of separate books for the alleged joint venture, nor of the parties holding themselves *306 out as joint venturers to persons with whom they dealt. From the financial statements of DAK it appears that the corporation owned the Motel and enjoyed all of the profits and bore all of the losses from its operation. Indeed it appears that whatever control over the enterprise petitioners enjoyed was not by reason of being joint venturers but because they were shareholders, officers and directors of DAK, and as the court stated in Skarda v. Commissioner,250 F. 2d 429, 434 (C.A. 10), The fact that the taxpayers exercised complete dominion and control over the corporation, were in charge of its administration and management, and fully directed its policies does not justify disregarding the corporate entity for tax purposes. Bearing in mind that the burden of proof is upon petitioners, we cannot conclude on the materials before us that the debt in question was other than a nonbusiness debt. To reflect certain concessions Decision will be entered under Rule 155.
Footnotes
1. The financial statements indicate that the following amounts were expended for "Officers' life insurance" in the years indicated: "OFFICERS' LIFE INSURANCE" EXPENSE Year
Amount
1957
$ 1,581.25
1958
1,868.75
1959
1,725.00
1960
1,581.25
1961
1,725.00
1962
1,725.00
1963
1,725.00
1964
431.25
Nothing in the record, however, discloses the identity of the beneficiaries or the owners of the policies.↩
2. SEC. 166. BAD DEBTS. (a) General Rule.-- (1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * * * * (d) Nonbusiness Debts.-- (1) General rule.--In the case of a taxpayer other than a corporation-- (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. * * * * *↩