**JAMES J. McHALE COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 29837.

United States District Court
N. D. Ohio, E. D.

March 13, 1957.

Robert Buckley, I. W. Sharp, Cleveland, Ohio, for plaintiff.

Gerome Fink, Dept. of Justice, Washington, D. C., for defendant United States Govt.

CONNELL, District Judge.

This action arises on a suit for a refund of a deficiency income tax for the year 1949 in the amount of $17,642.13, and interest assessed thereon in the amount of $2,357.28, paid by this plaintiff under protest in July, 1952. The sole basis for the deficiency assessment was the disallowance of a tax deduction of about one-half of the $81,301.56 compensation paid to Mr. J. L. Berger, the corporation's Vice-President and Treasurer, accrued by the company as an expense for the tax year 1949 and paid in 1950. All above $40,000 was held by the Commissioner of Internal Revenue to be excessive and unreasonable.

A very unique business situation has arisen here and to fully understand it, we must review the history of this relatively new and small business.

The James J. McHale Company is an Ohio corporation organized late in the year 1945, with a paid in capital of $10,000, for the purposes of carrying on a heating, ventilating, air conditioning and plumbing contracting business, and was engaged in carrying on such business in the years 1946 to 1949, inclusive. Half of the corporation's stock was owned by James J. McHale, a qualified and experienced plumbing contractor, and his daughter (later owned by his wife), and the other half by J. L. Berger, a qualified and experienced heating and ventilating and air conditioning contractor and his wife. McHale was the President of the corporation and Berger was its Vice-President and Treasurer. The four stockholders have at all times constituted the Board of Directors.

The corporation had no technically qualified salesmen except McHale and Berger. Its other employees were all union craftsmen, except for a very meager office force which qualified to do only the simplest kind of office work, such as answering the telephone calls and keeping records of receipts and disbursements. The entire payroll, outside the two officers and union craftsmen, for the year 1948, was $2,107.53, and for the year 1949 was $7,852.85.

For the year 1946, which was the first year of the corporation's operations, and a year in which Berger was devoting a large part of his time to other business, neither of the officers drew any salary or compensation in any form from the corporation. For the year 1947, each of the officers drew a salary of $7,500 and the corporation showed a net profit of $16,815.13. Most of this profit was in the heating, ventilating and air conditioning department in which the contracts were obtained and the execution and completion supervised and their proceeds collected exclusively by Berger, who was devoting more and more of his time to this corporation's business as time went on.

In January 1948, Berger was unwilling to devote his full time to this enterprise on a 50-50 basis, since McHale was not producing nearly as much business, nor as profitable a business, as he was himself producing. The business marriage between this professional engineer and the plumber had become a very one-sided affair. Berger apparently felt that he had made a mistake going into corporate form. It had already become evident that his specialty was producing all the profit and he was unwilling to continue to work at such a sacrifice since the corporation, in effect, made no actual contribution.

Instead of leaving a $10,000 losing corporation, he agreed to continue under a new arrangement whereby the compensation of McHale and himself was set on a contingent basis, except for a minimum salary of $3,000 per annum for each. This new arrangement was made so that Berger would not abandon the enterprise and his friend and it was set forth in a resolution adopted by the Board of Directors in January, 1948 and reaffirmed by the Board in January, 1949.

In general, this contingent compensation plan, which was thus made effective for the years 1948 and 1949 (as well as for subsequent years) provided for compensation based upon the profits of all contracts completed within the year on which gross profit before officers' compensation was realized of more than $1,000 per contract. On any contract on which the gross profit or loss was $1,000 or less the corporation retained the profit or bore the loss. On all contracts on which the corporation realized a gross profit in excess of $1,000, a sum equal to 10% of the gross contract price, but not less than $1,000, was retained by the corporation and the remaining profit was credited to McHale on plumbing contracts, or to Berger on contracts for heating, ventilating and air conditioning, or 50% to each officer if the contract was a combination plumbing, heating, ventilating or air conditioning contract. Similarly, in case of loss, the first $1,000 was borne by the company, and all above that charged to the account of the officer in charge of the contract, or shared by the two officers in case of a combination contract.

The formula represented the efforts of McHale and Berger to do justice between themselves. It was a plan primarily directed to induce Berger to remain in the business for had he walked out—it would *all* have been his. McHale testified that he regarded the resolution as a fair arrangement in 1948 and he is still well satisfied with the plan. The court is here asked to determine that this formula was a direct effort to avoid taxes and that certain compensation realized thereunder is unreasonable.

During 1948, the first year of the operation of the Contingent Compensation Plan, McHale's compensation under the formula amounted to $6,179.65 and Berger's to $38,233.85. During the year 1949, with which we are concerned in

this case, McHale's compensation under the formula amounted to $8,442.64 and Berger's to $81,301.56. The corporation retained a net profit before federal income tax of $12,316.95 for the year 1949.

The formula appears reasonable as of the time when it started. Just when, if at all did it become unreasonable? If it had produced half as much, would it have been reasonable? No complaint has been registered by the Commissioner for the year 1948 when Berger's compensation was $38,233.85. Did the plan become unreasonable only in the year 1949 when he earned $81,301.56, since the government really made a decision here tantamount to saying that if the profit had been half as much in that year, it would then have been reasonable. But when did it become unreasonable?

Did the mere fact that the compensation for Berger become larger as the formula operated, in and of itself constitute unreasonableness? Do not corporations and individuals have a right to evolve such formulas to give incentive to those who are urged to produce, without their compensation becoming legally unreasonable merely because such incentive becomes very successful? Berger's seeming wrong was that in working so hard and producing so much and in receiving so much of what he produced, that he received an amount larger than he received the previous year. That was the challenge under the formula.

The court is constrained to follow the dictate of this 6th Circuit in the case of Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115, 119, wherein it states:

"Although every case of this kind must stand upon its own facts and circumstances, it is well settled that several basic factors should be considered by the Court in reaching its decision in any particular case. Such factors include the employee's qualifications; the nature, extent and scope of the employee's work; * * * a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; * * *."

Let's consider Berger; His qualifications are pre-eminent; he was the real producer with all due respect to McHale, for these were years when there was a surplus of plumbers and a scarcity of air-conditioning engineers. It is hard to compare this corporation with others in this period because there is not enough experience in their history to compare. The prevailing economic condition was unique. It was the industrial revolution in the heating, ventilating and air-conditioning field, at least in this area where the McHale Company operated.

It is very highly probable that this will have been the one pre-eminent year in Berger's working life. It happened once; it may never happen again. New theaters were installing air-conditioning and old ones were converting so that they might compete. This was for all practical purposes a two man operation with each of them, as the case may be, getting the contracts, planning the engineering jobs, hiring and supervising the skilled and unskilled labor necessary to perform the jobs, carrying on all the relations with those for whom work was performed, and collecting the accounts. Certainly much more than engineering duties alone. And the duty of this court is to determine whether or not, under all the circumstances, the compensation resulting therefrom was unreasonable.

Now of course, the plaintiff herein has the burden of proof. Has it sustained its burden of proving that the compensation paid to Berger was reasonable under the circumstances?

The court finds that the plaintiff has successfully shown the reasonableness of the compensation paid since it seems quite clear that without Berger, the corporation would not have been in existence in the year 1949. The court finds that it was reasonable under all these conditions. The corporation still had a normal return on its invested capital since it had over 100% profit for the year.

**118**

I find that the Resolution of January, 1948 was a free and open bargain between McHale and Berger for services to be rendered, not influenced by any consideration other than that of securing on fair and advantageous terms, the services of Berger, so that the corporation might continue in existence. It was not a device to avoid taxes and indeed Berger paid some additional $23,101.40 in taxes for the amount of compensation received over the $40,000 allowed by the Commissioner. I think the fact that the plan snowballed into seemingly great proportions for this one period does not retroactively constitute the original agreement an unreasonable one. I find that under the unique facts here peculiar to this case alone—it was not unreasonable.

The court finds that the corporation's real asset was Berger's capacity. He could have left it and made it personally. To him, the corporation was almost limited to an address. McHale admitted the injustice of the situation by agreeing to the Resolution, the purpose of which, was not to injure the Government tax-wise, but to insure Berger's continuance in the enterprise. Berger paid the proper tax on the total he received and, in this instance, the court finds that the Government is not legally entitled to more. The court further finds that the Resolution was a sincere, honest effort by these two men to arrange an equitable basis between themselves on which they could continue to operate as a corporation. It was not unreasonable when formulated. It did not become so during or after its operation. Mere success does not make it illegal.

The court concludes that under all these unusual, unique conditions present in this case, that the compensation paid Berger was not legally unreasonable and that the plaintiff has sustained its burden. For the foregoing reasons, the petition of the plaintiff is hereby granted. A decree may be entered in accordance with this opinion in favor of the plaintiff, The James McHale Company.