BOCA CONSTRUCTION INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Boca Constr. v. Commissioner
Docket No. 18570-92
United States Tax Court
T.C. Memo 1995-5; 1995 Tax Ct. Memo LEXIS 5; 69 T.C.M. (CCH) 1589; January 9, 1995, Filed *5 Decision will be entered under Rule 155. For petitioner: Richard S. Lynch and John Kennedy Lynch. For respondent: Mario J. Fazio and J. Scott Broome. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in petitioner's Federal income tax of $ 150,168 for the year ending March 31, 1989 (fiscal year 1989), and $ 186,940 for the year ending March 31, 1990 (fiscal year 1990). After concessions, the issue for decision is whether petitioner may deduct as reasonable compensation amounts it paid to its officers, Michael Bockrath (Bockrath) and Joseph Caizzo (Caizzo), in fiscal years 1989 and 1990. The following chart shows the contentions of the parties and the amounts allowed by this opinion: Allowable Deduction for Compensation Paid to Bockrath and Caizzo
FY 1989
FY 1990
Petitioner's position
Bockrath  $ 344,800
$ 408,750
Caizzo  344,800
408,750
Respondent's position
Bockrath  137,000
141,000
Caizzo  137,000
141,000
Amount allowed by
this opinion Bockrath  344,800
408,750
Caizzo  344,800
408,750
Section references are to the Internal Revenue Code in effect during the years in issue. Rule *6 references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner
Petitioner was a highway construction service corporation in Norwalk, Ohio, when it filed the petition in this case. It is a subchapter C corporation. Its principal business is removing asphalt or concrete from streets and highways (also known as grinding, milling, or paving) preliminary to street and highway resurfacing or construction. Petitioner's work typically includes grinding, handwork around manholes, and sweeping and removing the material. Some jobs involve traffic control. Petitioner has about 300 projects per year. 2. Petitioner's Owners
Bockrath and Caizzo founded petitioner in 1978. They have been shareholders (50 percent each) and officers of petitioner since 1978. They both performed chief executive officer and chief operating officer functions interchangeably. a. Michael Bockrath
Bockrath has been petitioner's president since 1978. He has an associate's degree from the Ohio College of Applied Science in Cincinnati. While in college he worked for A.F. Baltes, Inc., a highway contractor *7 in Norwalk, Ohio. He worked there for 8 years. He started as an officer manager and later was a road worker, layout project engineer, bridge superintendent, and project superintendent. After A.F. Baltes, Inc., went out of business, Bockrath worked for Chapman & Chapman, Inc.Chapman & Chapman, Inc., was a highway contractor that did concrete paving, grinding, milling, and bridge deck overlays. He was a foreman of a paving spread crew for about a year. He later worked for a small highway contractor for a year, then returned to Chapman & Chapman, Inc., where he developed its latex overlay program. b. Joseph Caizzo
Caizzo has been petitioner's secretary-treasurer since 1978. He has a bachelor of science degree in business administration from Youngstown State University. Caizzo worked for Jones McKnight Co. while he was a senior in high school, in college, and until 1974. Jones McKnight Co. supplied highway products to highway contractors. From 1974 to 1978, Caizzo worked for Chapman & Chapman, Inc., in Norwalk, Ohio. He met Bockrath there. 3. Petitioner's Early Years
In the spring of 1978, Bockrath and Caizzo decided to start a business that would do asphalt *8 and concrete removal jobs that were too small for the larger companies. They each refinanced their homes and borrowed $ 15,000 to start petitioner. They used that $ 30,000 and a $ 120,000 Small Business Administration (SBA) loan to buy a used small Gallion road planer, a pickup truck, a drop deck trailer, an old road tractor, and a welder. Petitioner used the Gallion road planer to grind concrete and asphalt pavements. Bockrath and Caizzo were petitioner's only two employees until 1980. In 1980, they used another SBA loan to buy a new, large milling machine which could grind and load simultaneously. They added two employees in 1980. Bockrath and Caizzo personally guaranteed petitioner's early loans. 4. Petitioner's Operations
Bockrath and Caizzo were both responsible for petitioner's operations. They had no managers between themselves and their field employees. They personally bought or leased equipment and maintained it. They financed and obtained insurance on the equipment which they bought. Petitioner did the vast majority of its work for the Ohio Department of Transportation (ODOT). Bockrath and Caizzo prequalified petitioner to bid on ODOT work. To be prequalified, *9 ODOT required petitioner to have adequate financial, equipment, and personnel capability to perform the work. Bockrath and Caizzo reviewed about 60 to 70 upcoming ODOT jobs every 2 weeks to find potential jobs for petitioner. When they identified a job that petitioner could perform, they ordered the plans, reviewed them, and selected the best way to complete the job. They then calculated petitioner's cost to perform the job. ODOT told Bockrath and Caizzo which competitors wanted to bid for the job. This information helped petitioner identify competitors and other bidders for whom petitioner could subcontract. Petitioner bid on about 2,000 jobs per year. There were at least 55 to 60 other contractors which were qualified by ODOT to do the same work as petitioners in fiscal years 1989 and 1990. Many of petitioner's competitors were large companies with more than $ 100 million in annual revenues. Bockrath and Caizzo modified their equipment to improve the efficiency and quality of petitioner's work. For example, they increased the horsepower of the milling machines and changed the cutting head drum pattern designs and grade controls. They changed the cutter heads and housing *10 to minimize damage if the cutter hit castings or water valve boxes. They completely redesigned the conveyer system on the large milling machines. They developed a cutter head that they could disassemble and adjust from 4 feet to 2 feet at the job site in 45 minutes. Before that, an operator would have to return the machine to the shop and disassemble it to install another cutter head and housing. The machine's manufacturer now uses their cutter head design. Bockrath's and Caizzo's modifications reduced the time and manpower required to do a job. Bockrath and Caizzo rebuilt the equipment during the winter. They taught their crews how to maintain the equipment and make repairs at the jobsite to save time. Petitioner had about 20 permanent employees and 12 to 14 temporary employees in fiscal years 1989 and 1990. By 1990, petitioner owned four large milling machines and three small ones. By 1990, petitioner had invested more than $ 2 million in machinery and equipment. 5. Petitioner's Finances
Petitioner used the accrual method of accounting in fiscal years 1989 and 1990. Petitioner paid both Bockrath and Caizzo $ 169,800 in salary and $ 175,000 in bonuses for a total *11 of $ 344,800 in fiscal year 1989 and $ 193,750 in salary and $ 215,000 in bonuses for a total of $ 408,750 in fiscal year 1990. Petitioner used a bonus formula based on gross receipts. To compute the bonus to be paid to Bockrath and Caizzo, petitioner first made the following four computations: Computation #1. All profits over 15 percent of volume. Computation #2. A. Obtain the most recent industry average figures for petitioner's type of industry from Robert Morris Associates or a comparable source. B. All profits over twice the average profit amount found in A. above.
Computation #3. All profits over $ 150,000. Computation #4. All profits over 25 percent of gross receipts from construction contracts less $ 1,500,000.
The bonus formula states that petitioner must select bonus amounts equal to the lowest of four computations and petitioner may select bonus amounts lower than or equal to the highest of the four computations. The total bonus could not exceed the lesser of 25 percent of volume (i.e., gross receipts from construction contracts) or 67 percent of profits. Petitioner adopted the bonus formula in 1984 and has applied it consistently since *12 then. Petitioner reported the following amounts on its income tax returns: FY 1989 FY 1990 Gross Sales:
$ 2,488,322.59
$ 2,558,903.44
Deduction for
689,600.00
817,500.00
compensation to  Caizzo and Bockrath:  Taxable income:
157,728.27
237,586.64
Dividends to shareholders:
4,000.00
5,000.00
Petitioner has the following history of gross receipts, officers' compensation, and dividends paid: Fiscal
Officers' Comp. Dividends
Year
Gross Receipts
Compensation
[1] % Paid 1979
$ 233,703.00 $ 74,759 32.0
$ 200  1980
304,741.00
63,101
20.7
2,860 1981
557,510.00
104,550
18.8
-0-
1982
896,434.00
288,400
32.1
300 1983
979,619.00
208,078
21.2
300 1984
1,223,725.00
306,520
25.0
400 1985
1,812,939.00
415,600
22.9
400 1986
2,562,794.00
756,000
29.5
200 1987
2,426,470.00
854,200
35.2
600 1988
2,777,148.00
726,334
26.1
3,000 1989
2,488,322.59
689,600
27.7
4,000 1990
2,558,903.44
817,500
31.9
5,000 From an original investment of $ 30,000, petitioner's value grew to $ 1,341,255 at the end of fiscal year 1990. *13 Petitioner's value increased a total of 11 percent in both fiscal years 1989 and 1990. Petitioner's shareholder equity increased a total of 7.5 percent in both fiscal years 1989 and 1990. Prices declined in fiscal years 1989 and 1990. The amounts of contracts ODOT awarded in 1988 and 1989 were the lowest since 1982. 6. CABO, Inc.
CABO, Inc. (CABO), was incorporated on June 7, 1987, as a subchapter S corporation. Bockrath's and Caizzo's wives owned CABO in 1989 and 1990. CABO ground concrete on bridge decks in the West Virginia area. Bockrath and Caizzo helped CABO in nearly all phases of its work. CABO did not deduct any amount for compensation of officers on its Federal income tax returns for 1989 and 1990. CABO did not pay Bockrath or Caizzo for services they provided to CABO. CABO reported the following on its income tax returns for 1989 and 1990: 1989 1990 Retained earnings
$ 201,538
- 0- Gross receipts
411,842
$ 636,245
Ordinary income
320,512
513,767
Salary deduction
61,563
87,977
OPINION 1. Background
A taxpayer may deduct "a reasonable allowance for salaries or other compensation for personal services actually rendered". *14 Sec. 162(a)(1). Compensation payments are deductible if they are: (a) Reasonable, and (b) purely for services. Sec. 162(a)(1); Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983), revg. and remanding T.C. Memo. 1980-282; Sec. 1.162-7(a), Income Tax Regs. Respondent contends that petitioner failed to carry its burden of proving that the amount of compensation petitioner paid to Bockrath and Caizzo was reasonable and that the payments were for services to petitioner. 2. Reasonableness of Bockrath's and Caizzo's Compensation
Courts have considered many factors in deciding whether the amount of compensation is reasonable, such as: (a) The employee's qualifications; (b) the nature, extent and scope of the employee's work; (c) the size and complexity of the business; (d) a comparison of salaries paid with gross and net income; (e) general economic conditions; (f) comparison of salaries to distributions to shareholders and retained earnings; (g) the prevailing rates of compensation for comparable positions in comparable companies; (h) the employer's salary policy to all employees; (i) the employer's financial *15 condition; (j) compensation paid in prior years; (k) whether the employee and employer dealt at arm's-length; and (1) whether the employee guaranteed the taxpayer's debt. Elliotts, Inc. v. Commissioner, supra; Kennedy v. Commissioner, 671 F.2d 167, 175 (6th Cir. 1982), revg. and remanding 72 T.C. 793 (1979); Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949), revg. and remanding a Memorandum Opinion of this Court; R.J. Nicoll Co. v. Commissioner, 59 T.C. 37, 51 (1972). No single factor controls. Mayson Manufacturing Co. v. Commissioner, supra.Whether amounts paid are reasonable is a question of fact. Botany Worsted Mills v. United States, 278 U.S. 282, 289-290 (1929); Estate of Wallace v. Commissioner, 95 T.C. 525, 553 (1990), affd. 965 F.2d 1038 (11th Cir. 1992). Respondent's determination is presumed to be correct, and petitioner bears the burden of proving that the amount *16 it paid to Bockrath and Caizzo was reasonable. Rule 142(a). If petitioner proves respondent's determination to be wrong, the Court must then decide the amount of compensation that was reasonable. Pepsi-Cola Bottling Co. v. Commissioner, 61 T.C. 564, 568 (1974), affd. 528 F.2d 176 (10th Cir. 1975). a. Employee's Qualifications
An employee's superior qualifications for his or her position with the business may justify high compensation. See e.g., Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1158 (1980); Dave Fischbein Manufacturing Co. v. Commissioner, 59 T.C. 338, 352-353 (1972). Respondent concedes that Bockrath and Caizzo have enough education and experience to operate petitioner successfully. Respondent points out that neither Bockrath nor Caizzo was president or vice president of any business before they founded petitioner, and argues that Bockrath and Caizzo are not qualified to manage a business that is larger than or different from petitioner. Respondent's arguments are not convincing; Bockrath and Caizzo are clearly qualified to *17 operate petitioner. This factor favors petitioner. b. Nature, Extent, and Scope of Employee's Work
The position held by the employee, hours worked, duties performed, and the general importance of the employee to the success of the company may justify high compensation. Mayson Manufacturing Co. v. Commissioner, supra; see, e.g., Elliotts, Inc. v. Commissioner, supra at 1245-1246; American Foundry v. Commissioner, 536 F.2d 289, 291-292 (9th Cir. 1976), affg. in part and revg. in part. 59 T.C. 231 (1972); Home Interiors & Gifts, Inc. v. Commissioner, supra at 1158. Bockrath and Caizzo performed virtually every task for petitioner except accounting. They oversaw petitioner's daily operations. Their work required judgment, technical skill, and adaptability. They were highly innovative. They successfully modified equipment and operating procedures. They trained petitioner's personnel to efficiently overcome obstacles. They were responsible for soliciting every major customer for petitioner and maintaining relations *18 with them. Bockrath and Caizzo provided significant services for petitioner which caused petitioner to succeed. Respondent contends that this factor favors respondent because Bockrath and Caizzo also ran CABO. However, there is no indication that the time they devoted to CABO detracted from their value to petitioner. Whatever time they spent on CABO, of greater significance is that they worked hard for petitioner and made it successful. This factor favors petitioner. c. Size and Complexity of the Business
Courts have considered the size and complexity of a taxpayer's business in deciding whether compensation is reasonable. Elliotts, Inc. v. Commissioner, supra at 1246; Pepsi-Cola Bottling Co. v. Commissioner, 528 F.2d at 179; Mayson Manufacturing Co. v. Commissioner, supra.
Respondent contends that this factor favors respondent because petitioner was small and its business was not complex. We disagree. Petitioner's business required expertise in bidding, maintenance, operations, management, and finance. Bockrath and Caizzo competed effectively with 55 to 60 companies, *19 many of which had annual revenues of more than $ 100 million. We conclude that this factor favors petitioner. d. Comparison of Salaries Paid With Gross and Net Income
Courts have compared gross and net income to amounts of compensation in deciding whether compensation is reasonable. Mayson Manufacturing Co. v. Commissioner, supra. The relationship between Bockrath's and Caizzo's compensation and gross and net income is clear and reasonable, especially in light of the bonus formula. Petitioner's accountant, Thomas McLaughlin (McLaughlin), credibly testified that he designed the bonus formula for petitioner to tie the bonus to petitioner's performance and to ensure return of value to the shareholders and proper retention of profits. Petitioner consistently applied the bonus formula from 1984 until the years in issue. Under the formula, petitioner generally paid to Bockrath and Caizzo about 30 percent of gross income [1] or about 80 percent of net income (not including Bockrath's and Caizzo's pay). *20 Respondent contends that the bonus formula is faulty because it was never adopted in petitioner's corporate minutes and it is tied to profits. McLaughlin credibly testified that the directors approved the formula in 1984 and that petitioner has applied the formula since then. Respondent did not rebut this testimony. Courts may give little or no weight to the lack of corporate formality in closely held corporations. See Levenson & Klein, Inc. v. Commissioner, 67 T.C. 694, 713-714 (1977); Reub Isaacs & Co. v. Commissioner, 1 B.T.A. 45, 48 (1924). In Levenson & Klein, Inc. v. Commissioner, supra at 714, we said: "Closely held corporations, as is well known, often act informally, 'their decisions being made in conversations, and oftentimes recorded not in the minutes, but by action.'" citing Reub Isaacs & Co. v. Commissioner, supra.The bonus formula was tied to petitioner's performance. The fact that the total compensation is based on a contingency, such as the taxpayer's gross profits, is an element tending to show reasonableness. See James J. McHale Co. v. United States, 151 F. Supp. 115, 118 (N.D. Ohio 1957) *21 (compensation based on gross profits found to be reasonable). Such an incentive does not detract from its validity. Respondent points out that petitioner had a lower profit margin in fiscal year 1990 than in fiscal year 1989 and did not grow from 1985 to 1990, yet continued to pay Bockrath and Caizzo approximately 30 percent of annual gross receipts. This fact shows that petitioner consistently applied the bonus formula. It does not convince us that petitioner's pay to Bockrath and Caizzo was unreasonable in fiscal years 1989 and 1990. This factor favors petitioner. e. General Economic Conditions
General economic conditions may affect a company's performance, and thus indicate the extent, if any, of the employee's effect on the company. Elliotts, Inc. v. Commissioner, 716 F.2d 1241 (9th Cir. 1983); Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115 (6th Cir. 1949). Petitioner faced declining prices and was forced to compete with a large number of other qualified contractors in fiscal years 1989 and 1990. The adverse economic conditions tend to show that Bockrath's and Caizzo's skill and diligence were *22 important to petitioner's success in fiscal years 1989 and 1990. Irby Constr. Co. v. United States, 154 Ct. Cl. 342, 290 F.2d 824 (1961). This factor favors petitioner. f. Comparison of Salaries With Distributions to Shareholders and Retained Earnings
The failure to pay more than minimal dividends may suggest that some of the amounts paid as compensation to the shareholder-employee is a dividend. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1322-1323 (5th Cir. 1987), affg. T.C. Memo. 1985-267; Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 152-153 (8th Cir. 1974), affg. T.C. Memo. 1973-130. The failure to pay dividends can be a "red flag" that invites further scrutiny by the court. Edwin's, Inc. v. United States, 501 F.2d 675, 677 n.5 (7th Cir. 1974). However, corporations are not required to pay dividends; shareholders may be equally content with the appreciation of their stock caused, for example, by the retention of earnings. Owensby & Kritikos, Inc. v. *23 Commissioner, supra; Elliotts, Inc. v. Commissioner, supra; Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. at 1162. Respondent argues that petitioner's dividends payment policy is strong evidence that Bockrath's and Caizzo's compensation was unreasonable. Petitioner's value increased 11 percent in fiscal years 1989 and 1990. Petitioner's shareholder equity increased 7.5 percent in fiscal years 1989 and 1990. Bockrath and Caizzo invested a total of $ 30,000. Petitioner paid small dividends every year totaling $ 17,260 from 1979 to 1990, and averaging $ 1,438 over those years. This factor is neutral. g. Petitioner's Salary Policy to All Employees
Courts have considered salaries paid to other employees of a business in deciding whether compensation is reasonable. Home Interiors & Gifts, Inc. v. Commissioner, supra at 1159. This factor focuses on "whether the entity as a whole pays top dollar to all of its employees, shareholder- and nonshareholder-employees alike." Owensby & Kritikos, Inc. v. Commissioner, supra at 1330. *24 A longstanding, consistently applied compensation plan is evidence that compensation is reasonable. Elliotts, Inc. v. Commissioner, supra.
Petitioner paid all of its employees bonuses in excess of those required by union contracts. However, the record is not clear about precisely how much petitioner paid its other employees. This factor is neutral. h. Petitioner's Financial Condition
The past and present financial condition of the company is relevant to deciding whether compensation was reasonable. Kennedy v. Commissioner, 671 F.2d at 174; Home Interiors & Gifts, Inc. v. Commissioner, supra at 1157-1158. Petitioner grew to become very profitable in fiscal years 1989 and 1990. This factor favors petitioner. i. Prevailing Rates of Compensation for Comparable Positions in Comparable Companies
In deciding whether the compensation is reasonable, we compare it to compensation paid for comparable positions in comparable companies. Elliotts, Inc. v. Commissioner, supra; Mayson Manufacturing Co. v. Commissioner, supra. *25 Petitioner relied on expert testimony by James Brennan (Brennan) and Harry Donovan (Donovan). Respondent did not call any witnesses. [2]Expert witnesses' opinions may help the Court understand an area requiring specialized training, knowledge, or judgment. Fed. R. Evid. 702; Snyder v. Commissioner, 93 T.C. 529, 534 (1989). We may be selective in deciding what part of an expert's opinion we will accept. Helvering v. National Grocery Co., 304 U.S. 282, 295 (1938); Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), affg. T.C. Memo. 1974-285; Parker v. Commissioner, 86 T.C. 547, 562 (1986); Chiu v. Commissioner, 84 T.C. 722, 734 (1985). *26 Donovan's testimony was not convincing because it was nothing more than unobjective, unbridled boosterism for petitioner's position. Much of what Brennan said was not convincing. He assumed that Bockrath and Caizzo were both entitled to be paid as presidents. This overstates reasonable compensation somewhat. He thought it would be reasonable to pay Bockrath and Caizzo the same as the highest amount paid to anyone in the survey. He used this approach in other cases in which he testified for the Commissioner because the taxpayers in those cases paid their employees more than the amounts Brennan found to be the highest salary for comparable companies. [3] However, we are not convinced that the data he chose was from comparable companies. Brennan appeared to selectively use data that favored petitioner. On balance, we treat this factor as neutral because respondent presented no evidence and petitioner's experts were not persuasive. *27 j. Compensation Paid in Previous Years
An employer may deduct compensation paid in a year even though the employee performed the services in a prior year. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 119 (1930); R.J. Nicoll Co. v. Commissioner, 59 T.C. at 50-51. Petitioner does not argue that the payments at issue were intended to be compensation for services to petitioner in prior years. This factor does not apply. k. Whether the Employee and Employer Dealt At Arm's Length
If the employee and employer did not deal at arm's length, such as if the employee is the employer's sole or controlling shareholder, it suggests the amount of compensation paid may be unreasonable. Elliotts Inc. v. Commissioner, 716 F.2d at 1246; Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d at 1324. We closely scrutinize compensation if the employee controls the employer to see if it is something other than the purchase price of the employee's services. Owensby & Kritikos, Inc. v. Commissioner, supra at 1322-1323; Charles Schneider & Co. v. Commissioner, 500 F.2d at 148; *28 see also Dielectric Matls. Co. v. Commissioner, 57 T.C. 587, 591 (1972). Bockrath and Caizzo were the sole shareholders and employees in fiscal years 1989 and 1990. That leads us to inquire whether an independent investor would approve the compensation in view of the nature and quality of the services performed and the effect of those services on the investor's return on his or her investment. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d at 1326-1327; Elliotts, Inc. v. Commissioner, supra at 1246. We believe an independent investor would approve of Bockrath's and Caizzo's compensation because of their successful leadership of petitioner and petitioner's growth. This factor favors petitioner. 1. Whether the Employee Guaranteed the Taxpayer's Debt
Courts have considered whether the employee personally guaranteed the taxpayer's debt. See R.J. Nicoll Co. v. Commissioner, supra at 51. Bockrath and Caizzo personally guaranteed petitioner's early loans. This factor favors petitioner. m. Conclusion
Most of the factors discussed above *29 favor petitioner and none favor respondent. We conclude that $ 344,800 is reasonable compensation for Bockrath and Caizzo in fiscal year 1989 and $ 408,750 in fiscal year 1990. 3. Whether Payments Are Purely for Services Provided to Petitioner
Petitioner must prove that the amounts it paid to Bockrath and Caizzo were for services provided to it and not for a position with no duties, or for dividends, equity, loan repayments, loans, purchase of assets, or services to CABO. Sec. 162(a)(1); Elliotts, Inc. v. Commissioner, supra at 1243; sec. 1.162-7(a), Income Tax Regs.
Respondent argues that Bockrath and Caizzo spent a substantial amount of time on CABO. Respondent infers that petitioner paid Bockrath and Caizzo for services they rendered to CABO. McLaughlin's testimony convinces us otherwise. McLaughlin created petitioner's bonus formula in 1984. This was 3 years before CABO was formed. Petitioner did not modify the formula after CABO was formed. Petitioner consistently made payments under the formula before and after CABO was formed. Thus, the existence of CABO had no effect on petitioner's payments to Bockrath and Caizzo. We *30 conclude that petitioner paid Bockrath and Caizzo for services they rendered to petitioner. 4. Self-Serving Testimony
Respondent contends that we should not consider Bockrath's and Caizzo's testimony because it is self-serving. We may not arbitrarily disregard testimony that is competent, relevant, credible, and uncontradicted. Conti v. Commissioner, 39 F.3d 658,     (6th Cir. 1994), affg. 99 T.C. 370 (1992) and T.C. Memo. 1992-616; Loesch & Green Constr. Co. v. Commissioner, 211 F.2d 210, 212 (6th Cir. 1954), revg. and remanding a Memorandum Opinion of this Court. We found their testimony to be generally credible. However, we do not decide this case based solely on their testimony. Rather, as discussed above, we also decide it based on McLaughlin's testimony, which we found to be credible; the stipulations; and evidence other than Bockrath's and Caizzo's testimony. 5. Conclusion
We conclude that compensation of $ 344,800 for fiscal year 1989 and $ 408,750 for fiscal year 1990 for each of petitioner's officers, Bockrath and Caizzo, is reasonable *31 and was paid for services Bockrath and Caizzo rendered to petitioner in those years. To reflect concessions and the foregoing, Decision will be entered under Rule 155. Footnotes
1. Officers' compensation as percentage of petitioner's gross receipts.↩
1. Petitioner did not have cost of goods sold; thus, gross receipts, gross sales, and gross income are approximately the same in fiscal years 1989 and 1990.↩
2. On brief, respondent argued that the notice of deficiency and respondent's position on brief are based on an analysis of Robert Morris Associates' data as if an expert had testified about respondent's method. We disregard this because there is no evidence in the record about how respondent determined what amounts were reasonable.↩
3. E.g., RTS Inv. Corp. v. Commissioner, T.C. Memo. 1987-98, affd. 877 F.2d 647 (8th Cir. 1989); Rutter v. Commissioner, T.C. Memo. 1986-407, affd. 853 F.2d 1267 (5th Cir. 1988); Diverse Indus., Inc. v. Commissioner, T.C. Memo. 1986-84; Owensby & Kritikos, Inc. v. Commissioner, T.C. Memo. 1985-267, affd. 819 F.2d 1315 (5th Cir. 1987); Lefkowitz v. Commissioner, T.C. Memo. 1983-356↩.